Ledon **TAYLOR**, Appellant–Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A02–0706–CR–472.**

Court of Appeals of Indiana.

Jan. 31, 2008.

**1200**

Lisa M. Johnson, Special Assistant, Marion County Public Defender, Appellate Div., Brownsburg, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

MAY, Judge.

Seventeen-year-old Ledon Taylor stole a car occupied by two children. When the children's father, Thomas Ardizone, pursued Taylor, Taylor abandoned the car. He removed a purse from the car and shot at Thomas. Taylor was convicted of two counts of kidnapping, Class A felonies;[1] two counts of confinement, Class B felonies;[2] two counts of auto theft, Class D felonies;[3] theft, a Class D felony;[4] at-

---

1. Ind.Code § 35–42–3–2(a)(2).

2. I.C. § 35–42–3–3(a)(2), (b)(2)(A).

3. I.C. § 35–43–4–2.5(b).

4. I.C. § 35–43–4–2(a).

tempted murder, a Class A felony;[5] and dangerous possession of a firearm, a Class A misdemeanor.[6]

Taylor raises the following issues on appeal: (1) whether there was insufficient evidence of a knowing mental state to support his convictions of kidnapping and confinement; (2) whether there was insufficient evidence of hijacking to support his conviction of kidnapping; (3) whether his convictions of kidnapping and confinement merge; (4) whether his convictions of theft and auto theft merge; (5) whether the jury was improperly instructed on attempted murder; and (6) whether his sentence is inappropriate. Finding his convictions of kidnapping and confinement merge, we affirm in part, reverse in part, and remand for the court to vacate Taylor's convictions and sentences of confinement.

## FACTS AND PROCEDURAL HISTORY

On February 26, 2006, Thomas and Shawn Ardizone pulled out of their garage in their Acura. Their two sons, a seven-year-old and a four-year-old, were sitting in car seats in the back seat of the car. As they exited the garage, they realized they had forgotten a bathing suit. Thomas parked the car and went inside to look for the bathing suit. When he did not return promptly, Shawn went inside. The car was left running with the two front doors open and the children still in the back seat.

While the Ardizones were inside, Taylor and Antonio Glaspy pulled into the Ardizones' subdivision in a Ford Escape[7] and saw the Acura running. Taylor stated he was going to take it. He exited the Escape and got into the Acura. The Ardi-

zones came out of their home as Taylor was beginning to back out of the driveway. The Ardizones ran toward the car, yelling repeatedly, "No. No. The kids." (Tr. at 24.) Thomas pounded on the front passenger's side of the Acura and continued yelling for his children. Taylor gave Thomas a "very smug" look. (Id. at 97.)

Thomas retrieved keys to their TrailBlazer and drove off after Taylor while Shawn called 911. Taylor exited the subdivision and drove away at a high rate of speed. Taylor caught up with Glaspy in the Escape. He pulled along side Glaspy and motioned Glaspy to pull over. Taylor pointed to the back seat, indicating there were children in the car.

Taylor pulled the Acura to the side of the road about one mile from the Ardizones' home. Taylor exited the Acura, taking Shawn's purse with him. Thomas pulled up in the TrailBlazer, which he stopped between the Acura and the Escape. As Taylor was getting into the Escape, he pulled a gun out of the waistband of his pants, aimed it directly at Thomas, and ordered Thomas to "get back." (Id. at 184.) Taylor fired a shot, which hit Thomas in the lower back. Taylor fired three or four additional shots, then got in the Escape with Glaspy, who drove away.

A jury found Taylor guilty of the offenses listed above. The trial court found Taylor's age carried some mitigating weight and found two aggravators: Taylor has an extensive juvenile record and the attempted murder was committed in the presence of the Ardizone children. Taylor was sentenced to forty years for attempted

---

**5.** I.C. § 35–41–5–1 (attempt); § 35–42–1–1 (murder).

**6.** I.C. § 35–47–10–5. Taylor was found guilty of carrying a handgun without a license, which the trial court found merged with dangerous possession of a firearm. Accordingly,

the court did not enter a judgment of conviction for that crime.

**7.** Taylor had stolen the Escape, and this is the basis for one of his convictions of auto theft. Taylor has not challenged this conviction on appeal.

murder, forty years for each kidnapping conviction, twenty years for each confinement conviction, three years for one count of auto theft, one and a half years for the other count of auto theft, one and a half years for theft, and one year for dangerous possession of a firearm. His sentences for confinement were to be served consecutively to his sentence for attempted murder, while all other sentences were to be served concurrently, making his aggregate sentence sixty years.

## DISCUSSION AND DECISION

### 1. *Sufficiency of the Evidence of Knowledge*

 Taylor argues his convictions of kidnapping and confinement cannot stand because there is insufficient evidence he knew the children were in the car when he stole it. In reviewing sufficiency of evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Dinger v. State*, 540 N.E.2d 39, 39 (Ind.1989). We consider the evidence most favorable to the verdict, along with all reasonable inferences, to determine whether a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id.* at 39–40.

Taylor's argument that he abandoned the car soon after realizing the children were in the car is an invitation to reweigh the evidence, which we decline.[8] The evidence favorable to the verdict establishes the crime was committed on a sunny day, the windows of the Acura were not tinted, and the Ardizones yelled loudly and repeatedly for their children as Taylor was pulling out of the driveway. Taylor acknowledges he "did not abandon the car

the instant he discovered it was occupied." (Appellant's Br. at 8.) Instead, he continued driving away with the children until he had secured his escape. A reasonable trier of fact could conclude Taylor knew there were children in the car as he approached it or almost immediately after he entered it. There was sufficient evidence he knowingly committed the offenses.

### 2. *Sufficiency of Evidence of Hijacking*

 Taylor was charged with kidnapping by hijacking: "A person who knowingly or intentionally confines another person ... while hijacking a vehicle ... commits kidnapping, a Class A felony." I.C. § 35–42–3–2(a). Hijacking is the exercise of "unlawful or unauthorized control of a vehicle by force or threat of force upon the vehicle's inhabitants." *Zimmerman v. State*, 785 N.E.2d 1158, 1161 (Ind. Ct.App.2003) (*quoting Clayton v. State*, 658 N.E.2d 82, 87 (Ind.Ct.App.1995)), *trans. denied* 792 N.E.2d 50 (Ind.2003).

Taylor argues there was no evidence he used or threatened to use force. We disagree. Taylor knew the children were in the car and were restrained in car seats. The doors of the Acura locked when Taylor put it in gear. The children could not escape because Taylor drove the car at a high rate of speed.

The danger to the Ardizone children falls squarely within the risk the legislature intended to prevent:

> We discern that the legislature had it in mind in enacting this part of the kidnapping statute to prevent persons from being exposed to that special danger, that increased probability of injury or

---

**8.** During closing arguments, the prosecutor stated, "Obviously it started out as an auto theft." (Tr. at 398.) Taylor claims this is a concession that he was not aware the children were in the car. While the State acknowledged Taylor's initial plan did not include kidnapping, the State argued Taylor was aware of the children's presence before he left the Ardizone's driveway. The quoted statement is in no way a concession that Taylor abandoned the car promptly upon realizing the children were in the car.

death, which results when one is seized and confined or transported in a commandeered vehicle. The message intended for the would-be wrong doer, is that if you are going to steal or commandeer a vehicle, let the people in it go and don't force people into it against their will.

*Wilson v. State,* 468 N.E.2d 1375, 1378 (Ind.1984).

██ When the victims are children, a defendant may need only minimal force to accomplish a hijacking. That the victims are relatively helpless does not absolve the defendant of liability for kidnapping. Taylor took advantage of the fact the children were restrained in car seats and locked in the car. He took further steps to prevent their escape by driving at a high rate of speed.

Taylor compares his case to *Smith v. State,* 270 Ind. 479, 386 N.E.2d 1193 (1979), and *Zimmerman v. State,* 785 N.E.2d 1158 (Ind.Ct.App.2003), *trans. denied* 792 N.E.2d 50 (Ind.2003), where the defendants were found not guilty of kidnapping despite their knowledge the vehicles they entered were occupied. However, the victims in *Smith* and *Zimmerman* were adults who were able to remove themselves from the vehicle without injury. Even if the Ardizone children could have gotten out of their car seats and unlocked the doors, they could not have exited the vehicle safely. Therefore, we conclude there was sufficient evidence of hijacking to support Taylor's kidnapping convictions.

### 3. *Merger of Kidnapping and Confinement*

██ Taylor asserts his convictions of kidnapping and confinement merge under the continuing crime doctrine. We agree. The kidnapping and confinement statutes may be violated by confining a person or removing a person. One continuous confinement may result in only one conviction, even if the defendant both confines and removes a person. *Boyd v. State,* 766 N.E.2d 396, 400 (Ind.Ct.App.2002). "A confinement ends when the victim both feels and is, in fact, free from detention, and a separate confinement begins if and when detention of the victim is re-established." *Id.*[9]

Taylor was convicted of kidnapping by confining a person while hijacking a vehicle and of confinement by removing a person. Although they are distinct acts, they are one chargeable offense if the confinement was continuous. The Ardizone children were confined when Taylor took control of the Acura, and they were continuously confined until he abandoned the car and fled the scene. Therefore, there was only one chargeable offense, and his convictions of confinement merge with his convictions of kidnapping. Accordingly, we order the trial court to vacate the confinement convictions and sentences. *See id.* at 401 (vacating conviction and sentence for attempted criminal .confinement because that crime and confinement conviction were one continuing crime).

9. The State argues Taylor may be charged with both offenses because he confined the children beyond the point when the hijacking was completed. In support of its argument, the State cites *Bartlett v. State,* 711 N.E.2d 497, 500 (Ind.1999), which states "the span of the kidnapping or confinement is determined by the length of time of the unlawful detention necessary to perpetrate the crime."

While this language arguably supports the State's theory, the opinion immediately thereafter states the confinement "ends only when the victim both feels, and is in fact, free from detention." *Id.* In *Bartlett,* our Supreme Court found there was one continuous confinement, although the defendant had alternately confined and removed the victims.

#### 4. *Merger of Theft and Auto Theft*

 Taylor also asserts his convictions of theft and auto theft should merge under the single larceny rule.

> The prevailing rule is that when several articles of property are taken at the same time, from the same place, belonging to the same person or to several persons there is but a single "larceny", i.e. a single offense. The rationale behind this rule is that the taking of several articles at the same time from the same place is pursuant to a single intent and design.

*Raines v. State*, 514 N.E.2d 298, 300 (Ind. 1987) (citations omitted).

 Taylor argues he took the car and the purse from the same place at the same time, and therefore, the convictions merge. A car thief begins asserting constructive control over the contents of the car when the car is stolen, but that does not necessarily trigger application of the single larceny rule. *See Jenkins v. State*, 695 N.E.2d 158 (Ind.Ct.App.1998) (State could have charged defendant with two separate offenses where he hijacked car and later released the owner, but refused to let her keep her purse). Merging Taylor's convictions does not serve the purpose of the rule—to punish a single criminal design only once. Having concluded it was not worthwhile to keep a car with two children in it and their father close behind, Taylor made an independent decision to steal Shawn's purse when he abandoned the car. *Cf. Raines*, 514 N.E.2d at 300–01 (defendant committed single larceny where he stole truck and scuba gear located in truck and there was no evidence the thefts were pursuant to separate schemes). Taylor's thefts were not pursuant to a single design and do not warrant application of the single larceny rule.

#### 5. *Instruction on Attempted Murder*

 A person may not be convicted of attempted murder unless the State proves beyond a reasonable doubt the defendant acted with specific intent to kill. *Hopkins v. State*, 759 N.E.2d 633, 637 (Ind.2001). Taylor tendered the following instruction on specific intent:

> In order to find the defendant guilty of Attempt[ed] Murder, the state must prove beyond a reasonable doubt that his conscious objective was to murder the alleged victims in this case.
>
> A specific intent to kill is a necessary requirement for a conviction of Attempt[ed] Murder. A specific intent goes beyond ["knowing,"] or being aware of a high probability that his actions might kill the alleged victims.

(Appellant's App. at 149.) The trial court declined to give the instruction on the ground the issue was adequately covered by other instructions. Taylor argues the trial court erred by refusing to give this instruction and by giving instructions that included the word "knowingly."

 "The manner of instructing the jury lies within the trial court's sound discretion." *Tormoehlen v. State*, 848 N.E.2d 326, 331 (Ind.Ct.App.2006), *trans. denied* 860 N.E.2d 583 (Ind.2006). "A trial court erroneously refuses a tendered instruction if: 1) the instruction correctly states the law, 2) evidence supports the instruction, and 3) no other instructions cover the substance of the tendered instruction." *Davidson v. State*, 849 N.E.2d 591, 593 (Ind.2006). "Jury instructions are to be considered as a whole, and we will not find that the trial court abused its discretion unless we determine that the instructions taken as a whole misstate the law or otherwise mislead the jury." *Davis v. State*, 835 N.E.2d 1102, 1113 (Ind.Ct.App.2005), *trans. denied* 855 N.E.2d 994 (Ind.2006).

The jury was instructed on attempted murder as follows:

> The crime of murder is defined as a person [sic] who knowingly kills another human being.
>
> The crime of attempted murder is defined as follows:
>
> A person attempts to commit murder when, acting with the specific intent to kill another person, he engages in conduct that constitutes a substantial step toward killing that person.
>
> To convict the Defendant, the State must prove each of the following elements:
>
> 1. the defendant, Ledon Taylor,
> 2. acting with the specific intent to kill Thomas Ardizone,
> 3. engaged in conduct, that is: shooting at and against the person of Thomas Ardizone, by means of a deadly weapon, that is: a handgun,
> 4. which conduct constituted a substantial step toward the commission of the crime of murder.

(Appellant's App. at 131.)

The attempted murder charge, which was read to the jury, also contained the word "knowingly:"

> Ledon Taylor, on or about February 26, 2006, did attempt to commit the crime of Murder, which is to knowingly kill a human being, namely: Thomas Ardizone, by engaging in conduct, that is: by shooting at and against the person of Thomas Ardizone with intent to kill Thomas Ardizone, by means of a deadly weapon, that is: a handgun, which con-

stituted a substantial step toward the commission of said crime of Murder.

(*Id.* at 127.)

Taylor directs us to *Dawson v. State,* 810 N.E.2d 1165, 1171 (Ind.Ct.App.2004), *trans. denied* 822 N.E.2d 974 (Ind.2004),[10] which states:

> [N]umerous opinions . . . have held that it is improper to include the term "knowing" in the mens rea instruction, even when the instruction properly states that the "specific intent to kill" is required. *Ramsey v. State,* 723 N.E.2d 869 (Ind.2000); *Clay v. State,* 766 N.E.2d 33 (Ind.Ct.App.2002); *Booker v. State,* 741 N.E.2d 748 (Ind.Ct.App.2000); *State v. Foster,* 733 N.E.2d 534 (Ind.Ct.App.2000).

*Ramsey, Booker,* and *Foster* were all cases in which the jury was instructed that proof of a "knowing" *mens rea* was sufficient for a conviction of attempted murder. The instructions in Taylor's case, however, explicitly require proof of specific intent. The jury was further instructed that a person acts intentionally "if, when he engages in the conduct, it is his conscious objective to do so." (Appellant's App. at 168.) The word "knowing" appears in the instructions only in conjunction with the definition of murder.

Of the decisions relied on by Taylor, *Clay v. State,* 766 N.E.2d 33 (Ind.Ct.App. 2002), is the most similar to his case. In *Clay,* the jury was instructed the State must have proved:

> The Defendant
>
> 1. *acting with the conscious purpose of killing Renee Clay*

---

10. The jury instructions in *Dawson* contained mixed references to knowing and intentional *mens rea.* However, *Ramsey, Clay, Booker,* and *Foster* were all decided after Dawson was tried, and therefore were irrelevant to the issue raised by Dawson, namely whether he received ineffective assistance of counsel. The *Dawson* opinion, therefore, does not apply the rule cited by Taylor.

2. knowingly or intentionally stabbed her

3. which was conduct constituting a substantial step toward the commission of the intended crime of killing Renee Clay.

*Id.* at 36 (emphasis in original). We determined "acting with the conscious purpose of killing Renee Clay" was sufficient to inform the jury the State must prove specific intent. *Id.* at 37. Even though the instruction included the word "knowingly," we found there was no fundamental error because the instructions as a whole informed the jury that specific intent was required. *Id.* at 38.

Although Taylor need not establish fundamental error,[11] his case is one step removed from *Clay* in that the word "knowing" does not appear among the elements of attempted murder. The instructions as a whole were not misleading, and the trial court did not abuse its discretion by giving them.

Nor did it abuse its discretion by declining to give Taylor's tendered instruction. The jury was instructed that specific intent must be proven, and intent was defined for the jury as Taylor suggested. Taylor's instruction highlighted the difference between "knowing" and "intentional," but the jury was given definitions of both words and could conclude for itself the standards were different. The other instructions covered the substance of Taylor's instruction.

### 6. *Appropriateness of Sentence*

 Finally, Taylor argues his sentence is inappropriate. We may revise a sentence if it is "inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule

7(B). We give deference to the trial court's decision, recognizing the special expertise of the trial court in making sentencing decisions. *Barber v. State,* 863 N.E.2d 1199, 1208 (Ind.Ct.App.2007), *trans. denied.* Although we conduct an independent review under App. R. 7(B), we "assess the trial court's recognition or nonrecognition of aggravators and mitigators as an initial guide to determining whether the sentence imposed here was inappropriate." *Gibson v. State,* 856 N.E.2d 142, 147 (Ind.Ct.App.2006). The defendant bears the burden of persuading us the sentence is inappropriate. *Rutherford v. State,* 866 N.E.2d 867, 873 (Ind.Ct. App.2007).

 Because we have found Taylor's convictions of confinement must be vacated, he is left with a forty-year sentence. We cannot say this sentence is inappropriate. Taylor's argument is founded on his claim he did not know the children were in the car when he stole it. There was ample evidence he knew the children were in the car, yet he drove away with the children until he secured his escape. Taylor then attempted to kill their father in their presence. The nature of the offenses does not support reduction of Taylor's sentence.

Nor does his character warrant a modified sentence. At age seventeen, Taylor already had an extensive juvenile record. Taylor has numerous true findings, including one for auto theft. He violated terms of suspension or home detention on several occasions. Despite having opportunities to reform his behavior, Taylor has engaged in an escalating series of offenses. Therefore, forty years is not inappropriate.

---

11. The State has argued Taylor must establish fundamental error because he did not specifically object to the use of the word "knowingly." However, Taylor's argument to the trial court was essentially that the word "knowingly" would be confusing to the jury unless his tendered instruction was also given, and we find the issue was adequately preserved.

Affirmed in part, reversed in part, and remanded.

KIRSCH, J., and RILEY, J., concur.