Jamall **BORUM**, Appellant–Defendant,

v.

**STATE of Indiana**, Appellee–Plaintiff.

No. 49A02–1010–CR–1099.

Court of Appeals of Indiana.

July 26, 2011.

Darren Bedwell, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BROWN, Judge.

Jamall Borum appeals his convictions and sentences for attempted carjacking as a class B felony[1] and attempted robbery as a class C felony.[2] Borum raises four issues which we consolidate and restate as:

I. Whether his convictions violate double jeopardy principles;

II. Whether his sentence is inappropriate in light of the nature of the offense and the character of the offender; and

III. Whether the abstract of judgment and judgment of conviction properly reflect Borum's convictions.

We affirm and remand.

The relevant facts follow. On April 22, 2010, Charles Gibson, his girlfriend Jessica Henson, and Christopher Douglas drove the pickup truck of Douglas's father from Douglas's house in Indianapolis to a local Village Pantry convenience store to purchase ice. Upon arriving, Douglas and Gibson exited the truck to enter the store, and they left the truck's engine running and Henson, who was sitting in the back seat, inside. Both men noticed Borum inside the store. While Gibson and Douglas were inside the store, Borum exited and Henson noticed him walk towards the

---

1. Ind.Code § 35–42–5–2 (2004); Ind.Code § 35–41–5–1 (2004).

2. Ind.Code § 35–42–5–1 (2004); Ind.Code § 35–41–5–1 (2004).

truck. Borum walked around the rear of the truck and then entered it from the driver's side. Once inside, Borum started "looking around, pull[ed] the sun visor down, the middle, and asks [Henson] where, if [she] had any money, where the money was" while using "a threatening voice." Transcript at 202. Borum demanded money from Henson "several times." *Id.* Borum stated that he did not "want to hurt nobody but [he] will." *Id.* at 203. Borum kept "fidgeting in his lap" which made Henson think that he had a weapon. *Id.* at 207. Henson informed Borum that she did not have any money. Borum started to "mess[ ] with the gas and he messed with the steering wheel but he did not shift it." *Id.* at 203. Borum was "revving the engine" and "playing with" the gearshift and he told Henson that he would "take the truck" if he did not get any money. *Id.* at 204. Henson told Borum "to take the truck [and] to let [her] out," but he "just kept looking around...." *Id.* at 205. Henson was "terrified" and was "shaking." *Id.*

When Gibson and Douglas exited the store, Gibson heard the truck's engine revving and, when he opened the passenger side door he saw Borum sitting in the driver's seat. Gibson saw Borum "grabbing the gear shift and trying to yank it down." *Id.* at 119. Gibson witnessed that Henson was "hysterical," and she "grabbed [Gibson] and she wouldn't let go...." *Id.* at 119, 121. Borum's "eyes [ ] got really big and he started reaching for the door." *Id.* at 121. Gibson reached for Borum and Borum "jumped out" of the truck. *Id.* at 122. Borum kept asking the two men in a forceful manner: "Where's the money, where's the money?" *Id.* Douglas told Borum that he did not have any money. Borum then started "throwing his hands around, you know, he was acting kind of weird...." *Id.* Borum walked towards Douglas and "put his hands down" and was "fidgeting around" which made Douglas think that Borum "might have a gun," and Douglas backed up. *Id.* at 161. However, Borum then turned around and ran away down an alley. The three then drove back to Douglas's house and called the police.

Indianapolis Metropolitan Police Officer Malachi West was dispatched to speak to the three victims and met them at Douglas's house. Officer West observed that the victims were "upset" and "energized," but after they started to calm down he spoke with them and they recited what had happened and gave a description of Borum. *Id.* at 39. Within about ten or twenty minutes, Officer West stopped Borum based upon the description the victims had given, handcuffed him, and called for a robbery detective. Detective Mark Sullivan arrived at the scene and asked that the victims be brought there to identify Borum as their attacker, and they did indeed identify Borum. As the victims arrived, Borum looked at Douglas and said: "Pimp juice, you know that wasn't me, Pimp Juice, you know that wasn't me." *Id.* at 166. Borum was arrested.

Borum was charged, as amended, with Count I, attempted carjacking as a class B felony, and Count II, attempted robbery as a class C felony. Also, on August 11, 2010, the State filed an information charging Borum as an habitual offender. September 2, 2010, the court held a jury trial in which Borum testified that he entered the truck after Henson asked him if he had any "weed," and he replied that he did. *Id.* at 282. Borum explained that he had the weed in his pants and was asking for money because he "was trying to make a quick transaction." *Id.* at 283. Borum also testified that when he was arrested he had weed on his person but that he "wasn't charged with it." *Id.* Afterwards, the State recalled Detective Sullivan to the

stand who testified that Borum did not have any marijuana or other contraband on him when he was arrested. The jury found Borum guilty as charged. Borum waived his right to a jury trial for the habitual offender phase, and the judge found Borum to be an habitual offender.

On September 13, 2010, the court held a sentencing hearing in which it noted that it did not "think that count two need[ed] to be vacated in this situation" because "it appears that [the jury] would have had to have used different facts." *Id.* at 410. The court sentenced Borum to the advisory terms of ten years on Count I and four years on Count II to be served concurrently. The court also enhanced Count I by ten years, which was the minimum enhancement, based upon Borum's adjudication as an habitual offender. Thus, Borum was ordered to serve an aggregate sentence of twenty years.

## I.

The first issue is whether Borum's convictions for attempted carjacking and attempted robbery violate Indiana's prohibition against double jeopardy pursuant to: (A) the actual evidence test from *Richardson v. State*, 717 N.E.2d 32 (Ind.1999); (B) the single larceny rule; and (C) the continuous crime doctrine. We address each of Borum's arguments separately.

### A. *The Actual Evidence Test*

The Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense." IND. CONST. art. 1, § 14. In *Richardson v. State,* the Indiana Supreme Court developed a two-part test for Indiana double jeopardy claims, holding that "two or more offenses are the 'same offense' in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." 717 N.E.2d 32 at 49.

Borum argues that "[t]he essential elements of attempted carjacking and attempted robbery are similar" and that "[b]oth counts name Jessica Henson as a victim." Appellant's Brief at 10. Borum argues that because "[t]he State presented evidence that Borum tried to take both money and the truck from Henson" and that "[t]he attempted robbery of money from within the truck does not distinguish the attempted robbery from the attempted carjacking," "[t]here is at least a 'reasonable possibility' that Henson's testimony about being placed in fear convinced the jury to arrive at both guilty verdicts...." *Id.* at 11. The State argues that "there is no reasonable possibility that the jury found [Borum] guilty of attempted carjacking and attempted robbery under the same facts" because "there were two acts of attempted robbery ... and the jury was free to pick which act it chose to find [him] guilty" of on that charge. Appellee's Brief at 9.

Borum confines his constitutional claim to the "actual evidence test." Under the actual evidence test, the evidence presented at trial is examined to determine whether each challenged offense was established by separate and distinct facts. *Lee v. State,* 892 N.E.2d 1231, 1234 (Ind. 2008). To show that two challenged offenses constitute the "same offense" in a claim of double jeopardy, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense. *Id.* The Indiana Supreme Court has determined the possi-

bility to be remote and speculative and therefore not reasonable when finding no sufficiently substantial likelihood that the jury used the same evidentiary facts to establish the essential elements of two offenses. *Hopkins v. State,* 759 N.E.2d 633, 640 (Ind.2001) (citations omitted). In determining the facts used by the fact-finder to establish the elements of each offense, it is appropriate to consider the charging information, jury instructions, and arguments of counsel. *Lee,* 892 N.E.2d at 1234; *Spivey v. State,* 761 N.E.2d 831, 832 (Ind.2002).

■ In applying the actual evidence test, the court is required "to 'identify the essential elements of each of the challenged crimes and to evaluate the evidence from the jury's perspective. . . .'" *Lee,* 892 N.E.2d at 1234 (quoting *Spivey,* 761 N.E.2d at 832). The "reasonable possibility" standard "requires substantially more than a logical possibility" and "turns on a practical assessment of whether the jury may have latched on to exactly the same facts for both convictions." *Id.* at 1236.

> This court has previously discussed *Lee:*
> In *Lee,* the defendant was charged with burglary and attempted armed robbery as Class B felonies after he barged into the victim's home, pointed a gun at her, threatened her, and demanded money. 892 N.E.2d at 1234–35. Evidence establishing the burglary included the defendant's barging into the home, demanding money and possessing a gun. *Id.* at 1235[.] The charging information for the attempted armed robbery specifically alleged the defendant's acts of (1) entering the victim's home, (2) displaying a gun, and (3) threatening the victim while demanding money. *Id.* at 1236. The Supreme Court acknowledged that if there was a reasonable possibility that the jury had used the fact of the defendant's barging into the residence—rath-

er than his threats and demands—to establish the substantial step and mens rea elements of attempted armed robbery, the defendant's convictions for burglary and attempted armed robbery would be based on the same evidence and could not stand. *Id.* at 1235.

The *Lee* court concluded, however, that the defendant's convictions did not run afoul of the actual evidence test. In urging the jury to convict the defendant of attempted armed robbery, the prosecutor had emphasized the defendant's separate act of threatening the victim. 892 N.E.2d at 1236–37. Because the case involved a protracted criminal episode and the prosecutor had emphasized evidence distinct to each crime, the Supreme Court concluded as a practical matter that there was no reasonable possibility that the jury had relied upon the same evidence to support both crimes. *Id.* at 1236–37.

In reaching this holding in *Lee,* the Supreme Court distinguished cases where the record contained separate facts to support two convictions, *but the case was presented in such a way as to leave a reasonable possibility that the jury had used the same facts to establish both. . . .*

For example, in *Bradley v. State,* 867 N.E.2d 1282 (Ind.2007), cited by the *Lee* court, the defendant was charged with confinement and aggravated battery following an episode in which he stabbed his wife, pinned her head over a toilet, and struck her head repeatedly with a hammer. As the *Lee* court observed, the jury could have found that the stabbing supported the aggravated battery, and the hammer injury supported the confinement. 892 N.E.2d at 1235. However, because the charging information for aggravated battery had alleged both the hammer injury and the stab-

bing, and because the hammer injury evidence was extensive and would have left a strong impression on the jury, the Court found a reasonable possibility that the jury may have used the hammer injury to support both charges, which the Court concluded violated double jeopardy. *See id.* at 1237 (citing *Bradley,* 867 N.E.2d at 1285).

Similarly, in *Guffey v. State,* 717 N.E.2d 103, 107 (Ind.1999), also cited by the *Lee* court, the defendant was charged with aiding in armed robbery and conspiracy to commit armed robbery, yet the specific facts alleged in the armed robbery information were also alleged to constitute the overt act in the conspiracy information. In spite of the presence at trial of facts demonstrating alternative overt acts in support of the conspiracy, the *Guffey* court concluded that, based upon the charging information and corresponding jury instructions, there was a reasonable possibility that the jury used the same facts to establish both counts. 717 N.E.2d at 106–07. *See also Lundberg v. State,* 728 N.E.2d 852, 855 (Ind.2000) (finding double jeopardy violation where jury was instructed that murder was the only overt act supporting conspiracy to commit murder, despite evidence of other overt acts), *cited in Lee,* 892 N.E.2d at 1235.

*Newgent v. State,* 897 N.E.2d 520, 525–526 (Ind.Ct.App.2008) (emphasis added).

█ This court in *Newgent* went on to note that just because "a single fact supports a first charge and is also included among additional alternative acts to support a second charge … does not necessarily indicate a reasonable possibility that the jury based its findings of guilt upon the same evidence," and noted that this was especially true "in cases involving protracted criminal episodes." *Id.* at 526 (citing *Lee,* 892 N.E.2d at 1235–1236, and *Redman v. State,* 743 N.E.2d 263 (Ind. 2001)). In *Redman,* the defendant and others were charged with confinement and conspiracy to commit murder "after they forcibly abducted a mentally retarded woman, confined her in an attic for several days, forced her to engage in multiple sexual acts, and ultimately killed her and disposed of her body." *Lee,* 892 N.E.2d at 1236. The court instructed the jury "that 'overt acts' supporting the conspiracy included abduction, confinement, rape, and disposal of the body." *Id.* On appeal, the defendant argued that his convictions violated double jeopardy "because the jury could have used the fact of abduction to support both the confinement and conspiracy." *Id.* The Indiana Supreme Court rejected defendant's argument, however, and held that "the possibility that the jury relied on the abduction to support the overt act element was 'remote and speculative'" in light of the "'extended evidence of the protracted criminal episode, the State's closing argument, and the court's instructions which clearly authorized any one of several bases for finding the overt act element.'" *Id.*

Turning to this case, the charging information, as amended, on Counts I and II stated:

COUNT I

Jamall Borum, on or about April 22, 2010, did attempt to commit the crime of carjacking, which is to knowingly take from the person or presence of Jessica Henson a motor vehicle … by putting Jessica Henson in fear or by using or threatening the use of force on Jessica Henson by engaging in conduct described as: getting in the driver's seat of Jessica Henson's vehicle revving the vehicle's engine and attempting to put the vehicle in gear, which conduct constituted a substantial step towards commission of said crime of carjacking;

COUNT II

Jamall Borum, on or about April 22, 2010, did attempt to commit the crime of Robbery, which is to knowingly take from the person or presence of Charles Gibson and/or Jessica Henson and/or Christopher Douglas property, that is: United States currency, by putting Charles Gibson and/or Jessica Henson and/or Christopher Douglas in fear or by using or threatening the use of force on Charles Gibson and/or Jessica Henson and/or Christopher Douglas, by engaging in conduct, described as: demanding to know where the money was, which constituted a substantial step toward the commission of said crime of Robbery....

Appellant's Appendix at 74–75. The jury instructions contained elements that mirrored the charging information on each count. Thus, Count I alleged that Borum's conduct of revving the engine and attempting to put the vehicle in gear constituted a substantial step for attempted carjacking, while Count II alleged that Borum's conduct of demanding to know where the money was constituted a substantial step for attempted robbery.

Also, the record reveals that during closing argument, the prosecutor stated that "[w]e have a guy that tried to rob and we have a guy that tried to carjack." Transcript at 349. In discussing the attempted robbery charge, the prosecutor noted Borum's repeated questions of "where's the money," and stated "[w]e see him going after Chris and you can only imagine what Henson was going through in that truck for the minute or so...." *Id.* The prosecutor noted that Borum then approached "the men, demands to know whether [sic] the money is several times, raises his arm, reaches in his pants aggressively, victim backs up.... He tries to get money from these men as well." *Id.* at 354.

Particularly in light of the fact that the charging information and the jury instructions alleged different substantial steps on the two charges Borum faced, it is our assessment that there was not a reasonable possibility that the jury relied upon exactly the same facts in rendering convictions on each charge. Indeed, the State distinguished and set forth independent evidence for Counts I and II. Thus, we cannot say that Borum's convictions violate the actual evidence test. *Cf. Goudy v. State*, 689 N.E.2d 686, (Ind.1997) (noting that "ordinarily no 'included offense' problems" exist in cases in which "a person was convicted of Carjacking for the taking of a motor vehicle and of Robbery for the taking of some *other* property"), *reh'g denied.*

B. *The Single Larceny Rule*

■ The single larceny rule applies in the specific context of theft when several articles of property are taken at the same time, from the same place, belonging to the same person or to several persons. *Raines v. State*, 514 N.E.2d 298, 300 (Ind. 1987); *see also Jenkins v. State*, 695 N.E.2d 158, 162 (Ind.Ct.App.1998). The "larceny complained of" must be "but one single act or transaction." *Raines*, 514 N.E.2d at 300 (quoting *Furnace v. State*, 153 Ind. 93, 95, 54 N.E. 441, 444 (1899)). Determination of whether only a single larceny is committed turns in part on whether the defendant harbored a "single intent and design" when taking the property at issue. *See Taylor v. State*, 879 N.E.2d 1198, 1204 (Ind.Ct.App.2008). Thus, in such cases, "[i]f only one offense is committed, there may be but one judgment and one sentence." *Bivins v. State*, 642 N.E.2d 928, 945 (Ind.1994) (citing *Raines*, 514 N.E.2d at 300), *reh'g denied, cert. denied*, 516 U.S. 1077, 116 S.Ct. 783, 133 L.Ed.2d 734 (1996). This is ordinarily a question of fact to be determined by the

factfinder, but it may be resolved as a matter of law where intent is clearly manifested and uncontroverted. *Holt v. State*, 178 Ind.App. 631, 638 n. 13, 383 N.E.2d 467, 472 n. 13 (1978).

Borum argues that "the two counts are not distinguished from each other by the fact that along with Henson, Gibson and Douglas were all named as victims of Attempted Robbery of currency, while only Henson was named as a victim of the Attempted Carjacking." Appellant's Brief at 8. Borum argues that "[b]oth attempted crimes took place essentially at the same time and place" and that it does not "matter that the property in Count [I] is a motor vehicle while in Count [II] it is U.S. currency." *Id.* The State argues that "it is important to note that [Borum] attempted three distinct crimes: two acts of attempted robbery, which were charged as one, and one act of attempted carjacking." Appellee's Brief at 7. The State argues that Borum first entered the truck and "demanded money from Henson several times, in a threatening manner," that "[a] distinct act of attempted robbery followed when the men appeared on the scene," and that "the jury was free to pick which act it chose to find [Borum] guilty of attempted robbery." *Id.* at 7–8.

The State points to our opinion in *Taylor* to demonstrate that the single larceny rule does not apply. In *Taylor*, Ledon Taylor stole a vehicle from the victims' driveway while the vehicle had their children inside. 879 N.E.2d at 1201. Taylor left at a high rate of speed but was followed by the victims in another vehicle, and at one point Taylor decided to stop the vehicle and escape in another vehicle being driven by an accomplice. *Id.* Before exiting the vehicle, however, Taylor grabbed a purse and left with it. *Id.* A jury trial was held, and Taylor was convicted of numerous offenses including two counts of theft:

one count for stealing the vehicle and another count for stealing the purse. *Id.* at 1202. On appeal, Taylor argued that the single larceny rule applied and that therefore he could only be found guilty of one theft offense. *Id.* at 1204. We rejected this argument, however, concluding that merging his "convictions does not serve the purpose of the rule—to punish a single criminal design only once." *Id.* We held that Taylor's decision to steal the purse was "independent" and that the thefts "were not pursuant to a single design and do not warrant application of the single larceny rule." *Id.*

Also, a comparison of cases handed down by the Indiana Supreme Court which contain similar facts but provide differing outcomes further explains the single larceny rule. First, in *Stout v. State*, the defendant was convicted of burglary and two counts of theft. 479 N.E.2d 563, 564 (Ind. 1985). The Court noted that "facts in the case at bar reveal that the items listed in Count II of the information were taken from the victim's home, while the automobile was taken from his garage." *Id.* at 568. The Court held that on these facts, there was not "sufficient reason for finding that two separate offenses occurred" because "[a] garage is a part of one's home." *Id.* However, in *Bivins*, the Court did not find that the single larceny rule applied to merge the defendant's theft convictions. *Bivins*, 642 N.E.2d at 945. The Court, after examining *Stout*, held:

In the present case, Count IV charges the defendant with the theft of Hritzkowin's money and credit card, and Count III charges theft of Hritzkowin's automobile. Unlike the facts in *Stout*, however, the money and credit card were taken from Hritzkowin in his motel room and the automobile from the motel parking lot. We decline to deem the Holiday Inn parking lot to be a part of

Hritzkowin's motel room. This conclusion is not altered by the defendant's claim that at the time he took Hritzkowin's money and credit card, he also took the keys to the victim's vehicle.

*Id. See also Potter v. State,* 451 N.E.2d 1080, 1081–1082 (Ind.1983) (holding that the trial court did not err in not merging the defendant's robbery and theft convictions where the defendant robbed the victim in her apartment, tied her up, grabbed her car keys, and drove off in her vehicle and where the theft charge "specifically stated that the automobile was the only property involved ...").

Finally, we find *Walker v. State,* 903 N.E.2d 1022, 1025–1026 (Ind.Ct.App.2009), *trans. denied,* instructive. In Walker, the defendant and an accomplice entered a gas station which also contained a fast food restaurant. 903 N.E.2d at 1023. The defendant robbed the fast food restaurant's registers while the accomplice robbed the gas station. *Id.* On a post-conviction petition appeal, this court held that convictions of two counts of robbery did not violate the single larceny rule. *Id.* at 1025–1026. In so holding, this court stated:

> Importantly, Walker and his accomplice, Monday, did not take money from the same place. Monday entered the [gas] station and ordered its employees to give him money, and Walker entered the [ ] restaurant and demanded that the cashier take him to the safe. These facts establish that Monday and Walker intended to take property from two separate businesses and that more than one transaction occurred. That both businesses are owned by a single corporation is unavailing.

*Id.* at 1026.

In this case, Borum entered the pickup truck and demanded money from Henson in a threatening manner. Henson told Borum that she did not have any money, and afterwards he began revving the engine and told her that he would take the truck if he did not get any money. After Gibson and Douglas returned to the vehicle, Borum jumped out and then began asking the two men in a forceful manner "[w]here's the money, where's the money?" Transcript at 122. After Douglas told Borum that he did not have any money, Borum started "throwing his hands around," and as he approached Douglas he started "fidgeting around" which made Douglas think that Borum "might have a gun." *Id.* at 122, 161. Borum subsequently ran down an alley.

Here, we find Borum's acts more akin to those of the defendants in *Taylor, Bivins,* and *Walker* than the defendant in *Stout.* Like the defendant in *Walker,* Borum's actions, although occurring during a condensed period of time, constituted multiple transactions. First, he accosted Henson in the vehicle, and then he subsequently attempted to rob Gibson and Douglas outside of the vehicle. However, relief under the single larceny rule may be found only where the actions constituted "one single act or transaction." That Henson was listed as a victim in Count II is unavailing. Accordingly, we conclude that the court did not err in not dismissing Count II under the single larceny rule.

C. *The Continuous Crime Doctrine*

 The continuous crime doctrine essentially provides that actions that are sufficient in themselves to constitute separate criminal offenses may be so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction. *Walker v. State,* 932 N.E.2d 733, 735 (Ind.Ct.App. 2010), *reh'g denied.* The continuous crime doctrine "does not seek to reconcile the double jeopardy implications of two distinct chargeable crimes; rather, the doctrine defines those instances where a defendant's conduct amounts to only a single chargeable crime." *Riehle v. State,* 823

N.E.2d 287, 296 (Ind.Ct.App.2005), *trans. denied.* Thus, the continuous crime doctrine "prevents the State from charging a defendant twice for the same continuous offense." *Id.* The continuous crime doctrine may apply under two scenarios: "First, a defendant is charged multiple times with the same offense when he or she is charged multiple times with one offense. Second, a defendant is charged multiple times with the same offense when he or she is charged with an offense and a lesser included offense." *Walker,* 932 N.E.2d at 737 (citations omitted).[3]

Borum argues that his "charged conduct was continuous" because the attempted carjacking and robbery "both took place within a short time" in the parking lot of a convenience store and that the " 'substantial steps' in furtherance of each charged offense also overlapped in time." Appellant's Brief at 9. The State argues that the continuous crime doctrine "does not apply to factual situations where a defendant is charged with two or more distinct chargeable crimes." Appellee's Brief at 10.

In *Firestone v. State,* Clay Firestone and Bradley Griffin visited the home of S.W. in the evening. 838 N.E.2d 468, 470 (Ind.Ct.App.2005). At one point in the evening, Griffin threw S.W. on her bed and removed her pants and underwear and forced S.W. to perform oral sex on him. *Id.* At the same time, Firestone "forced his penis inside S.W.'s vagina." *Id.* Then, the two men "switched places" and Firestone forced S.W. to perform oral sex on him. *Id.* Firestone was charged in part with rape as a class B felony and criminal deviate conduct as a class B felony and was convicted on both counts. *Id.* On appeal, Firestone argued that his convictions violated the continuous crime doctrine. *Id.* at 471. We disagreed, noting that "the purpose of the continuing crime doctrine is to prevent the State from charging a defendant twice for the same continuous offense." *Id.* at 472. We held that "Firestone clearly committed two different offenses at different times" because "[t]he continuity of the actions does not negate the fact that they were completely different sexual acts committed at different times" and that "the rape was separate in time from the criminal deviate conduct." *Id.*

Here, similar to in *Firestone,* the continuity of Borum's actions does not negate the fact that there were different criminal acts committed at different times. First, Borum entered the pickup truck and de-

---

**3.** We note that in *Walker,* this court explained the relationship between the continuous crime doctrine and the prohibition against double jeopardy based upon the Indiana Constitution. 932 N.E.2d at 736. Walker argued that the continuous crime doctrine was not under the purview of double jeopardy; however, we examined *Boyd v. State,* 766 N.E.2d 396 (Ind.Ct.App.2002), and held:

> The statutory elements and actual evidence tests [from *Richardson*] are designed to assist courts in determining whether two separate chargeable crimes amount to the "same offense" for double jeopardy purposes. The continuous crime doctrine does not seek to reconcile the double jeopardy implications of two distinct chargeable crimes; rather, it defines those instances where a defendant's

conduct amounts only to a single chargeable crime. In doing so, the continuous crime doctrine prevents the state from charging a defendant twice for the same continuous offense.

[*Boyd,* 766 N.E.2d at 400]. Finding that the defendant subjected the victim to one continuous episode of confinement, we vacated the attempted criminal confinement conviction. *Id.* at 401.

*Boyd* thus clarified that while Indiana's double jeopardy clause prohibits convicting a defendant of two or more distinct chargeable crimes when they constitute the "same offense" under *Richardson,* it also prohibits convicting a defendant multiple times for the same continuous offense.

*Walker,* 932 N.E.2d at 736–737.

manded money from Henson. When she told him that she did not have any money, he threatened to steal the truck. Afterwards, Gibson and Douglas returned to the pickup truck after leaving the convenience store, and Borum exited the truck and asked the men forcefully "[w]here's the money, where's the money?" Transcript at 122. We conclude that the charges against Borum were two distinct crimes and that the continuous crime doctrine does not apply.

## II.

 The second issue is whether Borum's sentence is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind.2006). Borum argues that his offenses constituted "an opportunistic theft attempt" rather than "lying in wait and robbing someone" and that his "five prior convictions are not similar to the instant offense," and he asks this court to impose a "sixteen year aggregate sentence [as] requested by Borum's trial counsel...." Appellant's Brief at 13–14.

Our review of the nature of the offense reveals that Borum entered a pickup truck at a convenience store in which the engine was running and Henson was inside. While sitting in the driver's seat of the truck, Borum demanded money from Henson and "mess[ed] with the gas and ... with the steering wheel...." Transcript at 202–203. Borum was "revving the engine" and "playing with" the gearshift and he told Henson that he would "take the truck" if he did not get any money. *Id.* at

204. Borum was confronted by Gibson and Douglas after they left the store, and Borum asked the two men in a forceful manner: "Where's the money, where's the money?" *Id.* at 122. Borum was "throwing his hands around," and at one point he "put his hands down" and was "fidgeting around" which made Douglas think that Borum "might have a gun." *Id.* at 122, 161.

Our review of the character of the offender reveals that Borum, despite his young age of 22 at the time of the offense, has an extensive criminal history. As a juvenile, Borum had true findings for the following which, if charged as an adult, were: possession of a firearm on school property as a class D felony, theft as a class D felony, burglary as a class B felony, and battery as a class A misdemeanor. As an adult, on August 31, 2006, Borum was convicted of battery and receiving stolen property as class D felonies and was placed on probation. On March 5, 2007, Borum was convicted of resisting law enforcement as a class A misdemeanor. On March 9, 2007, Borum's probation was revoked and he was ordered to serve 365 days in the Department of Correction. Borum was released on November 21, 2007. Three months later, on February 24, 2008, Borum was charged with resisting law enforcement as a class D felony. Then, on June 5, 2008, Borum was charged with possession of cocaine or narcotic drug as a class D felony. On January 16, 2009, Borum was sentenced to 365 days executed on the resisting law enforcement charge and 180 days executed on the possession charge.

After due consideration of the trial court's decision, we cannot say that the sentence imposed by the trial court, which included the advisory term and the minimum habitual offender enhancement, is inappropriate in light of the nature of the offense and the character of the offender.

## III.

The third issue is whether the abstract of judgment and judgment of conviction properly reflect Borum's convictions. In his brief, Borum notes that "[t]he order of judgment of conviction shows that Borum was convicted of two class B felonies, although the charging information, jury verdicts and abstract of judgment show count [I] as a class B felony and count [II] as a class C felony." Appellant's Brief at 14 (citations omitted). Also, Borum notes that he "was originally charged with Carjacking, not Attempted Carjacking, in Count [I]," that "[t]he charging information was amended several times before trial," that "the jury was eventually instructed on Attempted Carjacking," and that "the written order of judgment of conviction shows the conviction on Count [I] as 'Carjacking/FB' and the abstract of judgment shows Count [I] as 'CARJACKING/FB.'" Id. at 14–15 (citations omitted). The State in its brief agrees with Borum. We agree and remand to the trial court for the court to correct the errors stated above. Thus, Borum's abstract of judgment and judgment of conviction will reflect that he was convicted of attempted carjacking as a class B felony and attempted robbery as a class C felony.

For the foregoing reasons, we affirm Borum's convictions and sentences for attempted carjacking and attempted robbery and remand to correct the abstract of judgment and judgment of conviction consistent with this opinion.

Affirmed and remanded.

FRIEDLANDER, J., and BAILEY, J., concur.