## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Scott H. Duerring
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Courtney Staton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

James Brown,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff*

October 1, 2020

Court of Appeals Case No.
20A-CR-790

Appeal from the St. Joseph
Superior Court

The Honorable Jeffrey L. Sanford,
Judge

Trial Court Cause No.
71D03-1909-F2-17

**Weissmann, Judge.**

[1] James Brown appeals his convictions for Level 5 Felony Robbery[1] and Level 2 Felony Criminal Confinement,[2] arguing that the evidence is insufficient to support the convictions. Finding the evidence sufficient, we affirm.

## Facts

[2] On the afternoon of September 22, 2019, Edward Brown, his wife Sarah Brown, and their two teenage grandchildren were heading home after attending church.[3] Edward was driving the family's Ford Flex, Sarah was in the front passenger's seat, and the two teenagers were in the back seat.

[3] The vehicle was stopped at an intersection when it was rear-ended by a vehicle being driven by a person later identified as Brown. Edward looked backwards and saw that Brown had exited his vehicle and begun to leave the scene. Edward exited his vehicle and told Brown to come back because they needed to exchange information. Edward was standing right by the driver's seat with the door open and the car still running when Brown turned around and approached Edward's vehicle. Brown forcibly pushed Edward away from the vehicle and entered it. Edward attempted to reach into the vehicle to prevent Brown from putting the car into gear but jerked his hand away as Brown drove away with Sarah and the two teenagers inside.

---

[1] Ind. Code § 35-42-5-1(a).

[2] Ind. Code § 35-42-3-3(b)(4)(B).

[3] The Browns have no relation to the appellant.

[4]     Sarah had been texting when the accident occurred. As soon as she felt the impact, she turned around to check on the boys. One had a bloody nose and the other said he was okay. She watched Brown approach Edward, use both hands to push him away from the vehicle, and enter the driver's seat. Brown shifted the vehicle into drive and sped away. Sarah pleaded with Brown, "please don't do this." Tr. Vol. II p. 36. Brown responded, "You called me back here, so we're all going to die today." *Id.* at 37. As Brown drove toward the next intersection, Sarah reached over to try to pull the keys out of the ignition. Brown and Sarah then began struggling over the keys. Eventually, Sarah was able to pull the keys out of the ignition. Brown fought with her, using force as they "tousl[ed] and tugg[ed] back and forth." *Id.* at 38. Brown lunged at Sarah, trying to reclaim the keys, but was unsuccessful. He jumped out of the vehicle and was later found and arrested.

[5]     On September 24, 2019, the State charged Brown with Level 5 felony robbery, three counts of Level 2 felony criminal confinement, three counts of Level 6 felony intimidation, Class B misdemeanor leaving the scene of an accident, Level 6 felony auto theft, and Class A misdemeanor battery. At the conclusion of the February 10, 2020, jury trial, the jury found Brown guilty as charged. The trial court ordered the leaving the scene of an accident, auto theft, and battery convictions merged into the robbery conviction and two of the criminal confinement convictions and the three intimidation convictions merged into one criminal confinement conviction. On March 19, 2020, the trial court sentenced Brown to five years for robbery and twenty-two years for criminal

confinement, to run concurrently, for an aggregate sentence of twenty-two years imprisonment. Brown now appeals.

# Discussion and Decision

[6] Brown argues that the evidence is insufficient to support the robbery and criminal confinement convictions. When considering the sufficiency of the evidence supporting a conviction, we will consider only the probative evidence and reasonable inferences that may be drawn therefrom that support the verdict. *E.g.*, *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). In conducting our review, we will neither reweigh the evidence nor judge the credibility of witnesses. *Id.* We will affirm unless no reasonable factfinder could find the elements of the crime proved beyond a reasonable doubt. *Id.*

# I. Robbery

[7] To convict Brown of Level 5 felony robbery, the State was required to prove beyond a reasonable doubt that he knowingly or intentionally took property "from another person or from the presence of another person" by using or threatening the use of force or by putting any person in fear. I.C. § 35-42-5-1(a). In the charging information, the State alleged that Brown "did knowingly take

property, a Ford Flex vehicle from Victim 1, by using force or threatening the use of force." Appellant's App. Vol. II p. 2-3.[4]

[8]     Brown argues, essentially, that because Edward was not actually *in* the vehicle at the time Brown took it, there is insufficient evidence to prove that Brown took the vehicle from Edward. We disagree. "'Presence,' within the rule that a taking of property from the presence of another may constitute a robbery, means a possession or control so immediate that violence or intimidation is essential to sunder it." *Paulson v. State*, 181 Ind. App. 559, 562, 393 N.E.2d 211, 213 (1979) (internal quotation omitted); *see also Ortiz v. State*, 716 N.E.2d 345, 351 (Ind. Ct. App. 1999) (observing that "the words ['from another person'] contained in the robbery statute are not so strictly construed as to exclude the taking of property from the immediate presence of the person") (internal quotation marks omitted). In this case, the following evidence supports the conclusion that Brown took the vehicle from Edward's person or presence:

- Edward testified that after the collision, he exited his vehicle, which was still running, to tell Brown to come back to the scene. Edward "was standing there by my door, by the driver's door," which was open. Tr. Vol. II p. 23. Brown approached Edward, pushed him with both hands away from the door, got in the vehicle, and drove it away. *Id.* at 30.

---

[4] Brown contends that the State "chose to charge robbery that was accomplished by the taking of property from the victim's person" as opposed to robbery that is accomplished by taking the property from the victim's presence. Appellant's Br. p. 8. This argument is unpersuasive, as the language of the charging information did not specify whether the vehicle was taken from Edward's person or his presence; therefore, the State was not limited to one theory or the other.

- Sarah testified that after the collision, Brown began to walk away from the scene. Edward then got out of the car to tell Brown to come back. Sarah thought Brown "was getting ready to give us his contact information," but instead, he "pushed my husband out of the way, pushed him real hard, jumped in the vehicle with me and my two kids, put it in drive real quick, and slammed on the gas pedal and took off with the [three] of us in there." *Id.* at 35-36.

A reasonable factfinder could conclude, based on this evidence, that Brown took the vehicle from Edward's person or presence. Edward was standing right by the open driver's side door, the vehicle was still running, his family was still inside the vehicle, and Brown had to use force (by pushing Edward away) to sunder Edward's possession or control of the vehicle. *See Paulson,* 181 Ind. App. at 562, 393 N.E.2d at 213 (noting that property is within the "presence" of a person if the person has "possession or control so immediate that violence or intimidation is essential to sunder it"). Therefore, we find the evidence sufficient to support Brown's conviction for Level 5 felony robbery.

## II. Criminal Confinement

[9] To convict Brown of Level 2 felony criminal confinement, the State was required to prove beyond a reasonable doubt that he knowingly or intentionally confined Sarah and her grandsons without their consent while hijacking their vehicle. I.C. § 35-42-3-3(b)(4)(B). "Hijacking" is defined as the exercise of "unlawful or unauthorized control of a vehicle by force or threat of force upon the vehicle's inhabitants." *Taylor v. State*, 879 N.E.2d 1198, 1202 (Ind. Ct. App. 2008) (internal quotation marks omitted).

[10] Brown's only argument with respect to this conviction is that the evidence does not support a conclusion that he used force or threat of force on Sarah and her grandsons. We disagree. To enter the vehicle, Brown had to use force on Edward by using both hands to push Edward away from the vehicle. After entering the vehicle, Brown threatened Sarah, warning that "you called me back here, so we're all going to die today." Tr. Vol. II p. 37. At that point, Sarah and her grandsons were so frightened that "[w]e all started screaming" and she feared that Brown would "kill my kids." *Id.* After Sarah pulled the keys out of the ignition, Brown fought with her, using force as they "tousl[ed] and tugg[ed] back and forth." *Id.* at 38. In fact, he applied such force that Sarah's "wrist got twisted," causing her "quite a bit of pain." *Id.* at 38-39.[5]

[11] A reasonable factfinder could conclude, based on this evidence, that Brown used force (physically struggling with Sarah over the car keys, twisting her wrist and causing her pain) or the threat of force (pushing Edward away from the vehicle, telling Sarah and the boys that they were all going to die) to exert and maintain unauthorized control of the vehicle. Therefore, the evidence is

---

[5] There is also evidence in the record that the Ford Flex door locks automatically engage when the vehicle reaches a speed of ten miles per hour. While the front seat passengers can still open their doors, the backseat passengers cannot. Moreover, Brown was driving the vehicle at a fast speed, meaning that the occupants could not exit the vehicle safely. *See Taylor*, 879 N.E.2d at 1202 (affirming conviction for kidnapping by hijacking because the "doors of the Acura locked when Taylor put it in gear . . . [and t]he children could not escape because Taylor drove the car at a high rate of speed"). While Edward and Sarah's grandchildren were teenagers, they were disabled and likely could not have escaped from the vehicle while it was in motion. Sarah said that even if she could have escaped the moving vehicle, "I was not going to leave my kids in that backseat with him." Tr. Vol. II p. 39.

sufficient to support Brown's conviction for Level 2 felony criminal confinement.

[12] The judgment of the trial court is affirmed.

Bailey, J., and Vaidik, J., concur.