530 So.2d 413 (1988)
Wayne M. EVERETT, Appellant,
v.
STATE of Florida, Appellee.
No. 4-86-1678.
District Court of Appeal of Florida, Fourth District.
August 24, 1988.
Richard L. Jorandby, Public Defender, and Anthony Calvello, Asst. Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and John W. Tiedemann, Asst. Atty. Gen., West Palm Beach, for appellee.
*414 DOWNEY, Judge.
Appellant, Wayne M. Everett, was convicted of second degree murder and sentenced to twenty-two years' imprisonment. On appeal he poses six points for our consideration, only one of which, we believe, requires any extended discussion.
Randy Feickert, a girl named Kimberly Shipp, and others were drinking in the Shamrock Inn when appellant arrived looking for Shipp's sister. Eventually, appellant and Feickert got into a fight in the parking lot. Several witnesses sought to intervene, without success, and Feickert seemed to be having the best of the fight. The altercation ended abruptly, and appellant got up off the ground and entered a car with Shipp and another witness. About that time, other people exited the bar and approached Feickert as he fell to the ground. When they went to assist him, it appeared he had been stabbed in the chest, a wound that later caused his death. No one ever saw a weapon in the possession of either combatant before, during, or after the fight. However, appellant had an empty sheath for a lock-blade knife on his belt.
A few days after this incident, the police took two different statements from Shipp in which she stated, among other things, that when she and appellant got into the car to leave the scene of the fight, appellant said, "I thing Randy got stabbed. Let's get out of here." She also stated that the detective interrogating her admonished her that was a very important point and asked if appellant was the one making the statement. She answered "Yes." In her second statement, Shipp stated that appellant stabbed the victim before she arrived on the scene of the fight, or while the fight was going on. However, the sum total of her statement is that she really did not know when, or if, appellant stabbed the victim.
At trial, the sense of Shipp's testimony regarding who killed Feickert was that she simply didn't know. She wasn't sure whether appellant had made any statement in the car as they were departing the scene nor did she know how or when the victim was stabbed. In other words, she either never knew what happened or could not remember.
The critical point made by appellant on this appeal is that the trial court committed reversible error in declaring Shipp an adverse witness and allowing the state to examine her by leading questions that introduced into evidence her pretrial statements.
The authorities are quite clear in Florida that not every prior inconsistent statement made by a witness offered by a party enables that party to have the witness declared adverse so as to allow impeachment of the witness by use of the prior statements. The witness must not only fail to give the beneficial evidence the party had expected of him, but he must become adverse by testifying in a fashion that is prejudicial to the cause of the party producing him. A good exposition of the rule is contained in Jackson v. State, 451 So.2d 458, 462 (Fla. 1984), quoting from Adams v. State, 34 Fla. 185, 195-96, 15 So. 905, 908 (1894):
It is very erroneous to suppose that, under this statute [§ 1101 Rev.Stat.Fla. (1892), precursor to § 90.608(2), Fla. Stat. (1979)], a party producing a witness is at liberty to impeach him whenever such witness simply fails to testify as he was expected to do, without giving any evidence that is at all prejudicial to the party producing him. The impeachment permitted by the statute is only in cases where the witness proves adverse to the party producing him. He must not only fail to give the beneficial evidence expected of him, but he must become adverse by giving evidence that is prejudicial to the cause of the party producing him. When a party's witness surprises him by not only failing to testify to the facts expected of him, but by giving harmful evidence that is contrary to what was expected, then, as is the purpose of this law, he is permitted to counteract the prejudicial effect of the adverse testimony of such witness, by proving that he has made statements on other occasions that are inconsistent with his present adverse evidence. It never *415 was the purpose of this statute to allow a party to put up a witness for the purpose of endeavoring to get from him beneficial evidence, and upon his simple failure to testify to the desired facts, to permit him to get the benefit of those expected facts, as substantive evidence through the mouth of another witness, under the guise of immpeachment. Evidence adduced in this manner is nothing more than the veriest hearsay, and is inadmissible. Even where a witness is properly impeached by proof of conflicting statements made on other occasions, the conflicting statements as made to and detailed by the impeaching witness should not be considered as substantive evidence in sustenance of the party's cause who produced the impeached witness; but has weight only for the purpose of counteracting or annulling the harmful effects of the adverse testimony in the cause given by the impeached witness that is inconsistent with his statements testified to have been made on other occasions.
See also 1 Ehrhardt, Florida Evidence, § 608.2 (2d ed. 1984). In addition, as stated in Parnell v. State, 500 So.2d 558, 561 (Fla. 4th DCA 1986), "a party may not impeach its own witness unless that witness' testimony proves adverse to the calling party. The witness must give testimony prejudicial to the calling party; the fact that a witness cannot recall making prior inculpatory statements is insufficient." Under the circumstances of this case, we do not believe the state could lay a sufficient predicate to have Shipp declared an adverse witness. Shipp's testimony at trial was not "affirmatively harmful" or prejudicial to the state. It was inconsistent in certain respects and, no doubt, disappointing to the prosecutor but not affirmatively harmful as required by the rule.
The error in allowing Shipp to be impeached as an adverse witness by the prosecution was compounded by the state in using the pretrial statements as substantive evidence in closing argument over defendant's objection. In her closing argument, the prosecutor stated:
Circumstantial evidence shows you the Defendant's motive, the Defendant's opportunity, and the weapon all point to him, Butch Everette. There are a few other things, other footprints that the Defendant leaves for you to see. First of all, he flees the scene, tells Kim in the car, "Randy's been stabbed," he knew what happened.
MR. HITCHCOCK: There is no evidence of that, Your Honor. There simply is none. As a matter of fact, the evidence was quite the contrary.
THE COURT: What the attorneys say at the time is not evidence and the jury will use their best collective and individual memory to recall the evidence.
Thus, even if the court's ruling that Shipp was an adverse witness were proper, error was committed in allowing the state to use the prior inconsistent statements, admitted to attack Shipp's credibility, as substantive evidence of guilt. Admittedly, early on in the case, during one of the state's many attempts to have Shipp declared adverse, the court had admonished the jury that such evidence was admitted as bearing only upon the witness's credibility and not as substantive evidence. However, in the face of the state's attempt in final argument to use those statements as substantive evidence of guilt, and over objection, we believe the court erred in not sustaining the objection to the argument and in failing to instruct the jury adequately.
We find no reversible error demonstrated by the other points raised; however, we believe the error raised by Point I requires reversal of the judgment and sentence and a new trial.
ANSTEAD and STONE, JJ., concur.