560 So.2d 1304 (1990)
Craig WILLIAMS, Appellant,
v.
STATE of Florida, Appellee.
No. 88-1130.
District Court of Appeal of Florida, First District.
April 27, 1990.
Rehearing Denied June 4, 1990.
*1305 Michael E. Allen, Public Defender, and Kathleen Stover, Asst. Public Defender, for appellant.
Robert A. Butterworth, Atty. Gen., and A.E. Pooser, IV, Asst. Atty. Gen., for appellee.
ERVIN, Judge.
Appellant seeks review of a judgment and conviction on two counts of sexual battery committed on a child under 12 years of age. We affirm as to the count alleging penile sexual battery but reverse as to the count charging digital battery.
The trial testimony reflects that appellant and the five-year-old victim had a close relationship  the victim had been left in appellant's care many times and had occasionally spent the night with him. On the night in question the child had stayed over at appellant's house, and when his parents picked him up the following day, he told his mother that appellant had done "ugly things" to him the previous night, and that he had "stuck his finger in my butt." The mother took him to the hospital for examination which revealed a large tear in the child's anal area. The examining doctor opined that the tear was caused by penile sodomy and not by a finger. The victim later tested positive for the sexually transmitted disease chlamydia. An expert in infectious disease testified that a positive culture for chlamydia in a child is strong presumptive evidence of sexual transmission.
The child's other out-of-court statements made that day to his mother just before and after examination were that Craig tied a sock around his mouth, spanked him, threatened to beat him and his parents if he "told"; that Craig then put a towel over him, "stuck his pee-pee in his butt"; and "stuck his finger in his butt and told him that he would dig it [excrement] out of him." A nurse from the Child Protection Team conducted an interview with the child on videotape four days later in which he repeated most of the foregoing statements.
In finding the videotape and other statements admissible under Section 90.803(23), Florida Statutes (1987), the court found that the statements were corroborated by other evidence, and concluded they were reliable based upon the mental and physical age and capabilities of the child, the duration of the offense, and the relationship of the defendant to the victim. Appellant urges that the out-of-court statements are inadmissible because they were inconsistent with the child's initial reports; therefore, the post-exam statements were unreliable and, if the post-exam statements were excluded as unreliable, their exclusion rendered the pre-exam statements, which were also inconsistent with the child's trial testimony, the only evidence of digital sodomy. Specifically, appellant alleges that *1306 the child first reported that appellant had used his finger, that after the medical exam he variously reported appellant had used his penis and/or his finger, and that at trial the child testified that appellant had used only his penis. Hence, appellant continues, because inconsistent statements without more are insufficient as a matter of law to sustain a conviction, citing Jaggers v. State, 536 So.2d 321 (Fla.2d DCA 1988), the trial court erred in failing to grant the motion for judgment of acquittal as to the count relating to digital sexual battery. We agree.
The Jaggers court reversed two sexual battery convictions because the victims' trial testimony on the issue of penetration contradicted their prior out-of-court statements, thus making the latter amount to nothing more than evidence of prior inconsistent statements, which is inadequate to sustain such charges. The victims there testified unequivocally that defendant only touched them in the vaginal area "`but did not go inside.'" Jaggers, 536 So.2d at 324. The court reasoned:
The rule that prior inconsistent statements may not be used substantively as the sole evidence to convict (see [State v.] Moore, [485 So.2d 1279 (Fla. 1986)]), applies to [s]ection 90.803(23) evidence as well. Once the state introduced the exculpatory testimony, the inculpatory prior unsworn statements became prior inconsistent statements and should not have been allowed into evidence, in this case, for any purpose, and certainly not as substantive evidence. To allow the state to use as its sole evidence of the commission of the crime charged such prior unsworn, out of court statements which were not subject to cross-examination by the defendant, under the facts of this case violated appellant's sixth amendment right to confrontation and cross-examination. See Moore, 485 So.2d at 1282 (Overton, J., concurring specially); Everett v. State, 530 So.2d 413 (Fla.4th DCA 1988). Moreover, to interpret section 90.803(23) otherwise would allow that section to be used to avoid the provision of section 90.608(1) that prohibits a party from impeaching his or her own witness.
Jaggers, 536 So.2d at 325.
The rule is well established that the prosecution, in order to present a prima facie case, is required to prove each and every element of the offense charged beyond a reasonable doubt, and when the prosecution fails to meet this burden, the case should not be submitted to the jury, and a judgment of acquittal should be granted. Ponsell v. State, 393 So.2d 635 (Fla.4th DCA 1981). Although the state, at the trial below, introduced numerous out-of-court statements attributed to the victim through various persons relating to digital sodomy, testimony of that sort, as observed in Jaggers "amounts to nothing more than evidence of prior inconsistent statements of a testifying witness which are not admissible except when offered to contradict and to impeach the direct testimony offered at trial." Jaggers, 536 So.2d at 324. Consequently, as applied to the facts at bar, the out-of-court statements do not qualify as lawful exceptions to the hearsay rule under section 90.803(23), because they lack the requisite "trustworthiness," as provided in subsection (23)(a). We therefore agree with the Second District in Jaggers that such prior unsworn, uncorroborated statements "cannot constitute the sole evidence upon which to sustain appellant's conviction[] of the sexual battery." Id. at 325 (emphasis added).
The dissent refers to the child's response, "huh huh," to the question during his direct examination at trial regarding whether appellant had placed his finger inside the child as supporting appellant's conviction for digital sexual battery. This response cannot, in our judgment, be considered an affirmative reply. Our conclusion is supported by the fact that similar responses which clearly were negative answers were made by the child during pretrial proceedings. See, for examples, the following statements of the child made during an interview conducted by a member of *1307 the Child Protection Team, which was videotaped and transcribed: "Q. Okay. Has Craig ever done that to you before? A. Huh huh. Q. He hasn't? Has he done it to any other little boys, do you know? A. No." On another occasion during this proceeding the interviewer asked, "Well, did you see Craig's butt? A. Huh huh. Q. Did you see Craig's front part where he goes tee-tee? A. Uh huh."
We think it obvious from the above record references that the five-year-old child knew the difference between the negative response "huh huh" and the affirmative "uh huh." Again, during the competency hearing, the following similar answers were given: "Q. You go to kindergarten. Do you know where that school is? A. Huh huh (no). * * * Q. Do you remember Kelly, Kelly Williams, the girl that put you on the camera? A. Huh huh (no)."
Considering these answers, as well as the child's later in-court testimony before the jury, we conclude that there was no competent evidence from which the jury could determine that appellant was guilty of digital sexual battery. The victim's sworn testimony therefore supports a finding of only one act of penile sexual battery. To conclude otherwise would be to allow the state, contrary to the rule stated in Jaggers, to use the victim's prior unsworn, inconsistent out-of-court statements as substantive evidence in support of its case, without subjecting such statements to cross-examination, thereby violating the defendant's sixth amendment right to confrontation.
Nor can we agree with the dissent's assertion that the defense's motion for judgment of acquittal did not sufficiently "apprise the trial court of the alleged deficiency asserted here as to evidence on the digital sodomy count." Although the motion for judgment of acquittal stated generally that the prosecution had not met its burden of presenting a prima facie case of guilt against the defendant, we conclude, as the majority similarly did in Jaggers,[1] that it is clear from the record that the trial judge and counsel for the state understood that the defense's motion generally related to the issue of whether the evidence was sufficient to prove the essential element of penetration in regard to both counts of sexual battery, despite the failure of the motion to differentiate between digital or penile penetration. This conclusion is evident from the record of two proceedings before the trial judge  first, a hearing on the appellant's motion in limine, and second, the competency hearing. During both proceedings, the issue of penetration as to both counts was clearly raised by the defense.
The judgment of conviction is affirmed as to the count relating to penile sexual battery and reversed as to that alleging digital sexual battery, with directions that appellant be discharged as to such offense.
ZEHMER, J., concurs.
WENTWORTH, J., dissents with written opinion.
WENTWORTH, Judge, dissenting in part.
I would affirm with respect to all issues presented on appeal, finding that the trial court did not err in finding the child's statements after the medical exam to be reliable, and that the record before us supports his disposition of all material issues on both digital and penile sodomy counts.
Appellant's several grounds argued for inadmissibility of the out-of-court statements are: that since they were different from the child's initial reports, the statements made after the doctor's examination and diagnosis were unreliable and, if the post-exam statements were excluded as unreliable, that rendered the pre-exam statements (alleged to be inconsistent with his trial testimony) the only evidence of digital sodomy, and inconsistent statements *1308 without more are insufficient as a matter of law to sustain conviction, citing Jaggers v. State, 536 So.2d 321 (Fla.2d DCA 1988). I find the facts in Jaggers, relied on by appellant, are clearly distinguishable as noted below.
The five-year-old child's statements in this case show remarkable consistency in the context of his age and the literal terms and sequence of questions put to him. His immediate report to his mother was that appellant "stuck his finger in my butt." Other statements made by him that day to his mother just before and after medical examination were that Craig tied a sock around his mouth, spanked him, threatened to beat him and his parents if he "told"; then Craig put a towel over him, "stuck his pee-pee in his butt," and "stuck his finger in his butt and told him that he would dig it [excrement] out of him." (e.s.) Those statements were repeated by him on the videotaped interview by a nurse four days later.
The Jaggers court reversed sexual battery convictions because the child victims' direct exculpatory trial testimony on the issue of penetration explicitly denied and contradicted their uncorroborated out-of-court statements, rendering the latter evidence, standing alone and without a finding of corroborative circumstances, inadequate to sustain the charge. The victims testified unequivocally at trial that defendant only touched them in the vaginal area and "did not go inside." 536 So.2d at 324. The court held that their prior unsworn uncorroborated statements as to penetration "cannot constitute the sole evidence ... to sustain ... convictions," citing State v. Moore, 485 So.2d 1279 (Fla. 1986). Cf. Chambers v. State, 504 So.2d 476 (Fla.1st DCA 1987), affirming admission of such statements, even though recanted at trial, when corroborated only by testimony as to the victims' behavior in giving such statements.[1]
In contrast with the explicit testimony involved in Jaggers, my careful consideration of the victim's trial testimony in the present case indicates it is neither exculpatory nor consistently conflicting with his earlier statements as to both digital and penile sodomy. He responded both affirmatively and negatively on the critical point during three portions of his trial testimony. In chambers when testimonial competence was determined, he first nodded assent then shook his head to the question, "Did he stick his finger in you?" In response to the immediately following question, stated alternatively: "Well, did he or didn't he?" he said, "No." And the child's only declaratory statement about a finger was in response to a question about his visit to the doctor, i.e., "Did you tell him [the doctor] about the finger," to which the child answered (without further questions for clarification), "Him didn't do nothing with the finger." (e.s.) On direct examination the child's sole negative response on this issue was "Huh huh," at the end of a series of related questions, all of which were plainly calculated to be answered "No," as follows:
Q. Did he stick his knee in you?
A. No.
Q. Did he stick his foot in you?
A. No.
Q. Did he stick his finger in you?
A. Huh huh.
Q. Do you know what a penis is?
.....
A. I can't say it.

*1309 Q... . Is that what he stuck in you?
A. Uh huh. He done it... .
On brief inquiry by the court the child held up one finger when asked did "this" happen one time or more than one time, immediately after being asked what was stuck in him and responding in a whisper, "I don't want to say it. Penis." In its context the child's gesture cannot reasonably be taken as denying digital penetration at any other time, by mere inference from his confirming a single act of penile sodomy. Only by such an inference can one conclude that the child was contradicting all of his pretrial statements that both finger and penis were used. Certainly this five-year-old witness cannot be held to so precise a standard of articulation as to intend by the expression of one thing to exclude all others, a standard which is not uniformly applicable even by courts and even in the case of statutory language. In the difficult circumstances in which both court and counsel labored in this case, the response did not in my opinion expressly exclude the other act charged.
I recognize, as did the Jaggers court, the necessity for vigilant application of evidentiary rules to assure a fair trial, but conclude that the rule there stated is not appropriately applied to the evidence on the digital sodomy charge in this case. While the child's trial testimony does establish the act of penile sodomy, it does not, upon fair analysis, establish the absence of digital penetration in addition. The out-of-court statements, which eliminate any ambiguity on that charge, were therefore not contradictory, and upon determination of reliability by the court were admissible and sufficient to sustain the verdict. They were, in any event, circumstantially corroborated so as to be admissible within the rule in Chambers, supra.
The contention with respect to the reliability determination is that the trial court erred in admitting evidence of the child's statements after medical examination, which statements differ from the child's initial report insofar as they describe both penile and digital sodomy. The argument appears to be that those statements reflect improper influence from some source as a result of the doctor's conclusion that the child's anal tear was caused by a penis and not by a finger alone. I find no evidence to support such an inference. The doctor's testimony instead adequately explains and reconciles the victim's statements:
Q. And what did your physical examination reveal?
.....
A. There was a large tear in the back part of the anal area, a V-shaped tear... . [T]his is the worst one I've seen. It's the biggest.
Q. In your opinion, Doctor, how was this tear caused?
A. The young man was sodomized.
Q. Is that your expert opinion?
A. Yes. There were other things he said. I asked him some questions after he volunteered what I mentioned, and 
MR. ETHERIDGE: Your Honor, we're going to object to the hearsay matter contained in [the victim's] statements to Dr. Carr.
JUDGE: Overruled.
Q. Go ahead, Doctor.
A. I asked him, `how did you know that it was his finger that was in your behind?' And he says, essentially, `I just knew.' I says, `where was he at when this happened, was he beside you, in front of you, behind you?' `He was behind me.'
He didn't have any way of knowing what was there because he was behind him. But that was his view of things  it was his finger, he was behind him. I think he was sodomized.
.....
Q. Did you also request a rectal culture for chlamydia?
A. Yes. I asked a culture for gonorrhea and chlamydia to be done... . [T]he culture for chlamydia was positive.
.....

*1310 Q. Okay. Did you report that to the state attorney's office or to the authorities at that time?
.....
A. No, I did not report it to the state attorney's office. I reported it to the Child Protection Team.
I note also, although not urged by the state, that the defense did not by its motion for judgment of acquittal herein apprise the trial court of the alleged deficiency asserted here as to evidence on the digital sodomy count. The motion asserted only general insufficiency of the "prima facie case of guilt" on the charges, and referenced situs and identity issues. My study of the record indicates no significant support for the remaining points argued here.
I would affirm.
NOTES
[1] 536 So.2d at 323.
[1] The proper application of the rule on inconsistent hearsay must, in any event, be qualified in child sex abuse cases by the Florida Supreme Court decision in Glendening v. State, 536 So.2d 212 (Fla. 1988), on which rehearing was denied two months after release of Jaggers (decided by a split panel with dissent based on this issue). Glendening affirms a decision (from another second district panel having no common members with Jaggers) admitting prior inconsistent hearsay statements under section 90.803(23), Florida Statutes, when the three year old victim recanted during section 92.53(1) testimony held to be equivalent to trial testimony. The court cited this court's decision in Chambers, supra, and expressed no disapproval of its view on sufficiency of corroboration limited to circumstances surrounding the child's prior statements.