71 So.3d 54 (2011)
Rogelio DELGADO, Petitioner,
v.
STATE of Florida, Respondent.
No. SC09-2030.
Supreme Court of Florida.
May 26, 2011.
As Revised on Denial of Rehearing September 15, 2011.
*56 Carlos J. Martinez, Public Defender, and Manuel Alvarez, Assistant Public Defender, Eleventh Judicial Circuit, Miami, FL, for Petitioner.
Pamela Jo Bondi, Attorney General, Tallahassee, FL, Richard L. Polin, Bureau Chief, and Magaly Rodriguez, Assistant Attorneys General, Miami, FL, for Respondent.
PARIENTE, J.
We have for review the decision of the Third District Court of Appeal in Delgado v. State, 19 So.3d 1055 (Fla. 3d DCA 2009), involving the application of a provision of Florida's kidnapping statute, specifically section 787.01(1)(a)2., Florida Statutes (2006), and the interplay of that provision with our decision in Faison v. State, 426 So.2d 963 (Fla.1983). This Court's decision in Faison was intended to narrow the circumstances under which those defendants convicted of an underlying forcible felony would be automatically convicted of kidnapping; its three-part test was not intended to expand the class of defendants who could be subject to a kidnapping conviction or as a substitute for satisfying the elements of the statute. We conclude that the Third District misapplied our decision in Faison, and, accordingly, we have jurisdiction. See art. V, § 3(b)(3), Fla. Const.; see also Wallace v. Dean, 3 So.3d 1035, 1040 (Fla.2009) (identifying misapplication of decisions as a basis for express and direct conflict under article V, section 3(b)(3) of the Florida Constitution).
Rogelio Delgado was convicted of burglary of an occupied conveyance, grand theft of a motor vehicle (auto theft), and kidnapping. He received a thirty-year sentence for the burglary of an occupied conveyance, a ten-year sentence for the auto theft, and a life sentence for the kidnapping.[1] Delgado's convictions and sentences stem from his theft of a vehicle in which a two-year-old child was asleep in *57 the backseat. Such facts are undoubtedly enough to invoke fear in the minds of every parent in this state. The child's presence within the vehicle served as the basis for Delgado's conviction and thirty-year sentence for burglary of an occupied conveyance. However, the question here is whether Delgado committed the additional crime of kidnapping, subjecting him to a sentence of life imprisonment, if he did not know the child was in the backseat before or during his commission of the auto theft, which was the underlying felony used to support his kidnapping conviction. We conclude that because the State failed to produce sufficient evidence demonstrating Delgado's awareness of the victim before or during his execution of the underlying felony, critical statutory requirements for the kidnapping offense were not satisfied. Therefore, the Third District's decision relying on the Faison three-part test to affirm the trial court's denial of Delgado's motion for judgment of acquittal was erroneous. Accordingly, we quash the Third District's decision in this case.

FACTS AND PROCEDURAL HISTORY
The operative facts from which this case arose were presented at trial. At some time around 12 p.m. on May 24, 2006, Juan Gonzalez, the owner of a two-door, extended-cab, pickup truck with tinted windows, drove to the Flamingo Plaza furniture store located in Hialeah, Florida, and parked approximately ten yards away from the storefront. Gonzalez's girlfriend, Luisa Andelia Alvarado, and his aunt accompanied him to the store along with Alvarado's two-year-old daughter, who was asleep and fastened into a car seat in the backseat of the truck's extended cab.
Upon their arrival, Gonzalez and his aunt went inside the store to pick up pre-purchased furniture. Gonzalez then called over to Alvarado to assist them. When Alvarado exited the vehicle and walked into the store to help, she left the keys inside the vehicle with its engine running and her sleeping child unattended in the backseat. In a matter of minutes, and before Alvarado returned to the front door of the furniture store, Rogelio Delgado and an accomplice commandeered the pickup truck and drove away. A surveillance camera outside the storefront recorded the perpetrators and the auto theft.
Although there were no eyewitnesses to this sequence of events, when Gonzalez and Alvarado realized that the truck was missing, they immediately called 911 to report the incident. Within twenty to thirty minutes of this report, the police located the truck some distance north of Flamingo Plaza in the back of a business parking lot just outside of Hialeah's city limits.[2] The truck's engine was still running, and the doors were left unlocked. Detective Roger Hernandez, the first officer to arrive at the scene where the vehicle was recovered, opened the driver's side door and saw the child in the back in her car seat. The detective testified that the child's eyes were puffy from crying, she had mucous running down her face, and she looked exhausted. However, the child appeared to be unharmed. In addition, the front-seat area of the truck's cab had been ransacked; the radio had been removed, tools had been taken, and the glove compartment and ashtray were damaged and thrown on the floor. After police brought Alvarado to the recovery site, officers handed the child to her. The mother testified that her daughter looked "[f]rightened" *58 and was crying because she was "looking at so many people that she did not recognize," including multiple officers and news reporters.
Following this incident, police officers used still images captured by the storefront surveillance camera to search for Delgado. Later that day, police found him along with his accomplice near the scene where the vehicle was recovered. Based on the foregoing acts, Delgado was charged with four offenses: burglary of an occupied conveyance, grand theft, auto theft, and kidnapping with the intent to commit or facilitate a felony in violation of section 787.01(1)(a)2., Florida Statutes (2006).[3] That statute defines the crime of "kidnapping" as "forcibly, secretly, or by threat confining, abducting, or imprisoning another person against her or his will and without lawful authority, with intent to ... [c]ommit or facilitate commission of any felony." Delgado was then tried separately from his accomplice on these charges.
At Delgado's trial, no direct evidence was introduced that he ever became aware of the child's presence during the course of the underlying charged offenses. Following the close of the State's case, Delgado moved for a judgment of acquittal on the kidnapping charge, asserting a lack of knowledge and advancing reasons why the Faison test was not met. The trial court denied Delgado's motion and then charged the jury on the kidnapping charge in the following manner:
To prove the crime of kidnapping as charged in Count 4 of the information, the State must prove the following elements. 1. Rogelio Delgado forcibly, secretly or by threat confined, abducted or imprisoned M.H., a minor, against her will. 2. Rogelio Delgado had no lawful authority. 3. Rogelio Delgado acted with the intent to commit or facilitate the commission of grand theft auto of a motor vehicle.
In order to be kidnapping, confinement or abduction or imprisonment must not be slight, inconsequential, or merely incidental to the felony. It must not be of the kind inherent in the nature of the felony and must have some significant independence of the felony in that it makes the felony substantially easier of commission or substantially lessens the risk of detection.
Confinement of a child under the age of 13 is against his will if it is done so without the consent of the parents or legal guardian.
The jury subsequently found Delgado guilty on all four charges.
With respect to his kidnapping conviction, Delgado received a mandatory life sentence as a prison releasee reoffender under section 775.082(9)(a), Florida Statutes (2006). As to his convictions for burglary of an occupied conveyance and auto theft, Delgado was sentenced to thirty years' and ten years' imprisonment, respectively, as a habitual offender. Finally, in regard to Delgado's conviction for grand theft, which was reduced to petit theft, he was sentenced to time served. All sentences were to run concurrently. Delgado appealed his convictions and sentences to the Third District Court of Appeal, challenging the trial court's denial of his motion for judgment of acquittal on the kidnapping charge.[4] The Third District *59 affirmed Delgado's kidnapping conviction, concluding that sufficient evidence existed to support the jury's verdict. Delgado, 19 So.3d at 1056.

ANALYSIS
The issue we must address in this case is whether a defendant commits the crime of kidnapping with the intent to commit or facilitate an underlying felony where the evidence produced at trial fails to establish that he or she had knowledge of the victim's presence before or during the execution of that underlying felony. In resolving this issue, we first review Florida's kidnapping statutory scheme and the three-part test this Court adopted in Faison v. State, 426 So.2d 963 (Fla.1983). Next, we examine the elements of section 787.01(1)(a)2., Florida Statutes (2006). Then, we address the Third District's decision in Delgado and conclude that it misapplied this Court's holding in Faison by conflating the language of the kidnapping statute with Faison's three-part test and improperly relying on Taylor v. State, 879 N.E.2d 1198 (Ind.Ct.App.2008). Finally, we apply the correct rule of law to the facts of this case and hold that insufficient evidence exists to support Delgado's conviction for kidnapping.

The Interplay between Faison and Section 787.01(1)(a)2., Florida Statutes
In Florida, the crime of kidnapping requires a specific intent on the part of the defendant. See Crain v. State, 894 So.2d 59, 69 (Fla.2004); Sochor v. State, 619 So.2d 285, 290 (Fla.1993). Section 787.01(1), Florida Statutes (2006), codifies this offense and sets forth four separate categories of specific intent, the establishment of any one of which will support a conviction under the statute. See Justus v. State, 438 So.2d 358, 367 (Fla.1983). The Legislature defines the criminal act of kidnapping, in relevant part, as follows:
(1)(a) The term "kidnapping" means forcibly, secretly, or by threat confining, abducting, or imprisoning another person against her or his will and without lawful authority, with intent to:
1. Hold for ransom or reward or as a shield or hostage.
2. Commit or facilitate commission of any felony.

3. Inflict bodily harm upon or to terrorize the victim or another person.
4. Interfere with the performance of any governmental or political function.
§ 787.01(1)(a), Fla. Stat. (emphasis added). Further, under section 787.01(1)(b), "[c]onfinement of a child under the age of 13 is against her or his will within the meaning of this subsection if such confinement is without the consent of her or his parent or legal guardian." § 787.01(1)(b), Fla. Stat.[5] In this case, Delgado was convicted of kidnapping with the intent to commit or facilitate commission of the underlying felony of auto theft pursuant to section 787.01(1)(a)2.
While the statutory definition of section 787.01(1)(a)2. appears relatively straightforward, the inquiry into whether a kidnapping has occurred under this provision does not end with a plain reading and application of its elements. Instead, this Court has recognized that the statute's literal interpretation "would result in a kidnapping conviction for `any criminal *60 transaction which inherently involves the unlawful confinement of another person, such as robbery or sexual battery.'" Berry v. State, 668 So.2d 967, 969 (Fla.1996) (quoting Mobley v. State, 409 So.2d 1031, 1034 (Fla.1982)); see also Lynch v. State, 2 So.3d 47, 62 (Fla.2008) (recognizing that "the plain text of section 787.01, Florida Statutes, could lead to potentially absurd results"). Therefore, in an effort to limit the scope of that particular subsection so as "to prevent any crime that involves some level of confinement or detention from also constituting a kidnapping," Lynch, 2 So.3d at 62, this Court in Faison looked beyond Florida jurisprudence and adopted a three-part test promulgated by the Supreme Court of Kansas in State v. Buggs, 219 Kan. 203, 547 P.2d 720 (1976), wherein that court interpreted a similar, but not identical, kidnapping statute. See Faison, 426 So.2d at 965-66.
Faison provided the framework for analyzing the facts of a case to determine whether a defendant's conduct amounts to a confinement crime under section 787.01(1)(a)2. distinct from other criminal charges involving forcible felonies. Pursuant to Faison,
[I]f a taking or confinement is alleged to have been done to facilitate the commission of another crime, to be kidnapping the resulting movement or confinement:
(a) Must not be slight, inconsequential and merely incidental to the other crime;
(b) Must not be of the kind inherent in the nature of the other crime; and
(c) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection.
Faison, 426 So.2d at 965 (quoting Buggs, 547 P.2d at 731) (alteration in original). Since our decision in that case, we have adhered to the principle that proof of each factor adopted in Faison is necessary for a kidnapping conviction under subsection 787.01(1)(a)2. to be upheld. See, e.g., Lynch, 2 So.3d at 62-63 (applying the Faison test to section 787.01(1)(a)2.); Boyd v. State, 910 So.2d 167, 183-84 (Fla.2005) (same); Chavez v. State, 832 So.2d 730, 764 (Fla.2002) (same).
However, by adopting the Buggs three-part test in Faison, we did not hold that the test's three elements would supplant, or stand in lieu of, the statutory language of section 787.01(1)(a)2. Rather, we recognized that because a literal application of section 787.01(1)(a)2. would convert any forcible felony into two distinct felonies kidnapping and the underlying felony applying the statutory language in addition to the three-part test would justifiably serve to limit that provision's broad scope. Under the proper analysis, to establish the offense of kidnapping pursuant to section 787.01(1)(a)2., the State must first demonstrate that every element of the statute has been satisfied before turning to the three-part test we adopted in Faison.

The Elements of Section 787.01(1)(a)2., Florida Statutes
This Court has previously recognized that "[t]he Legislature is vested with the authority to define the elements of a crime." Reynolds v. State, 842 So.2d 46, 49 (Fla.2002). For that reason, we begin our analysis of whether Delgado committed the crime of kidnapping in order to commit or facilitate the commission of the underlying felony of auto theft with an examination of the plain language of section 787.01(1)(a)2. See GTC, Inc. v. Edgar, 967 So.2d 781, 785 (Fla.2007) ("The plain meaning of the statute is always the starting point in statutory interpretation."). As stated above, section 787.01(1)(a)2. provides that "[t]he term `kidnapping' means forcibly, secretly, or by threat confining, abducting, or imprisoning another person *61 against her or his will and without lawful authority, with intent to ... [c]ommit or facilitate commission of any felony." Based on a plain reading of this statutory provision, its language can be broken down into two essential components: (1) a forceful, secretive, or threatening act by the defendant that confines, abducts, or imprisons another person against his or her will; and (2) engaging in such conduct with the specific intent to commit or facilitate the commission of an underlying felony. Therefore, "[k]idnapping requires proof of both confinement and criminal intent underlying the confinement." Johnson v. State, 969 So.2d 938, 955 (Fla.2007). Stated differently, to establish a kidnapping under this provision, "the State must also prove that the unlawful confinement occurred with a specific intent." Crain, 894 So.2d at 73.
Because the language of the statute requires an overt act on the part of the defendant, and because that act must be performed with a specific intent to commit or facilitate the commission of an underlying felony, clearly a defendant must first have knowledge of an intended victim in order to effectuate his or her intent. See State v. Giorgetti, 868 So.2d 512, 515 (Fla. 2004) (recognizing, in the context of criminal offenses, that "because of the strength of the traditional rule that requires mens rea, offenses that require no mens rea are generally disfavored" and that the United States Supreme Court has "virtually created a presumption in favor of a guilty knowledge element absent an express provision to the contrary" (citing Staples v. United States, 511 U.S. 600, 606, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994))); see also Lovette v. State, 636 So.2d 1304, 1307 (Fla. 1994) (upholding kidnapping conviction due in part to the fact that defendant "intended that the victims be confined" in a closet to complete the robbery of a store by leaving undetected (emphasis added)); Polite v. State, 973 So.2d 1107, 1113 (Fla. 2007) (interpreting Florida's resisting-an-officer-with-violence statute and stating that the word "resisting" as used in the statutory language, by its "very nature ... implies an element of knowledge, i.e., an awareness that another is exerting force and an intent to counter that force in opposition"). Such knowledge should arise either before or during the commission of the underlying felony used to support the kidnapping charge.
Accordingly, where a defendant is charged with kidnapping under section 787.01(1)(a)2., the State must prove that the defendant was first aware of the victim's presence in order to kidnap that victim with a specific intent to commit or facilitate the commission of an underlying felony. See § 787.01(1)(a)2., Fla. Stat. It is only after the evidence satisfies the preceding statutory elements that courts may then address whether the Faison test's three prongs apply. With these principles in mind, we turn to the Third District's decision in Delgado.

The Third District's Decision Below
The Third District framed the issue in this case as "whether Delgado committed kidnapping when he and a co-defendant jumped into a pickup truck left running by its driver and drove away with a two-year-old child asleep in the truck, seat-belted into the back seat." Delgado, 19 So.3d at 1056. To resolve this issue, the district court appears to have created a categorical rule that once a defendant drives away with someone else's child, regardless of that defendant's knowledge of the child's presence, the defendant "move[s] from the realm of a crime against property to that of a crime against persons" due in part to the "special danger" associated with young children helplessly confined inside car *62 seats. Id. at 1058. The Third District's categorical rule creates an implicit distinction in the kidnapping statute's application that is dependent upon the status of the victim as an adult or a helpless child.
In reviewing the trial court's denial of Delgado's motion for judgment of acquittal on the kidnapping charge, the Third District bypassed an application of the language of section 787.01(1)(a)2. and instead focused its analysis on the applicability of Faison to this particular case. Initially, the court made several inferences based upon the facts, first noting that it was "reasonable to infer from the evidence that Delgado became aware that the child was confined in the truck in the course of removing the radio, taking the owner's tools, and ransacking the interior of the vehicle in an obvious search for other valuables (if not at the time Delgado jumped into the front seat)." Delgado, 19 So.3d at 1057. The court then further explained:

Faison requires "movement or confinement," not both. Here the confinement of the child continued through the theft of contents within the vehicle and even after Delgado's abandonment of the unlocked, still-idling vehicle. The continued confinement of the child in this case was essential to Delgado's attempt to avoid apprehension for the theft of the vehicle and its contents. Only through an anonymous tip of some kind or a voluntary surrender could Delgado have avoided the inference that his successful consummation of the theft of the truck and its contents was more important to him than the continued and dangerous confinement of the helpless child.
Id. at 1057-58. The Third District also concluded that "[t]he jury could reasonably and fairly infer that Delgado's abandonment of the confined child was to facilitate commission of the theft by avoiding detection and apprehension." Id. at 1057 n. 3.
After reaching these inferences, the Third District applied the Faison test to the facts by focusing its analysis on the test's first prong. The district court stated in relevant part:
The confinement of the child was not slight, inconsequential, and "merely incidental" to the theft of the truck and contents. To the contrary, once Delgado drove away with someone else's child, he moved from the realm of a crime against property to that of a crime against persons. The Court of Appeals of Indiana considered similar facts (a carjacker drove away an automobile that had been left running in the driveway with the front doors open and children, ages four and seven, in carseats in the back) and addressed the special danger to the children....
Delgado, 19 So.3d at 1058. The district court then quoted an excerpt from Taylor v. State, 879 N.E.2d 1198 (Ind.Ct.App. 2008), an Indiana appellate court decision explaining the "special danger" that results when automobile hijackings occur:
We discern that the legislature had it in mind in enacting this part of the kidnapping statute to prevent persons from being exposed to that special danger, that increased probability of injury or death, which results when one is seized and confined or transported in a commandeered vehicle. The message intended for the would-be wrong-doer, is that if you are going to steal or commandeer a vehicle, let the people in it go and don't force people into it against their will.
Delgado, 19 So.3d at 1058 (quoting Taylor, 879 N.E.2d at 1202-03).
Analogizing the Taylor decision's "special danger" reasoning to this case, the Third District concluded that "[a]lthough *63 the Florida statute does not include such language, the `special danger' analysis of kidnapping squares neatly with the `not slight, inconsequential, and merely incidental' element of Faison." Id. In other words, the district court's decision suggests that the child's confinement was not incidental to Delgado's underlying auto theft, thereby meeting the first prong of Faison, because of the "special danger" that was imposed upon a helpless, two-year-old child who remained fastened inside the backseat of a car after the auto theft reached its ending point.

The Third District's Misapplication of Faison

While this Court has acknowledged in the past that the Faison test "is not an easy one to apply," attributing the test's difficulty "not to the test itself but rather to the diverse factual situations to which it must be applied," we have also cautioned against revising the Faison test because doing so "would lead us to stray even further from the language of the statute." Berry, 668 So.2d at 970. Notwithstanding this Court's prior admonition, the State argues that the Third District's expansive interpretation and application of section 787.01(1)(a)2. and the Faison test, in particular, were proper. We disagree and conclude that the Third District misapplied our decision in Faison in two important aspects.
We first conclude that the Third District's decision incorrectly conflates the language of section 787.01(1)(a)2. with the Faison test's three parts. Although it is difficult to refute the Third District's reasoning that Delgado's abandonment of the child left her in a precarious state, and we too find this fact troubling, the court's rationale does not explain how Delgado's decision to leave the scene established the statutory elements of kidnapping with the intent to facilitate auto theft. The crux of the district court's decision relies on an "infe[rence] from the evidence that Delgado became aware that the child was confined in the truck in the course of removing the radio, taking the owner's tools, and ransacking the interior of the vehicle in an obvious search for other valuables." Delgado, 19 So.3d at 1057. After Delgado became aware of the child's presence, the district court explained, the child's "continued confinement ... was essential to [his] attempt to avoid apprehension for the theft of the vehicle and its contents," and thus supported a kidnapping conviction. Id. (emphasis added). However, under section 787.01(1)(a)2., a defendant's awareness of the victim must arise before or during the commission of the underlying felonyauto theft in this caseand not after the fact, as the Third District presumes took place. Accordingly, a victim's "continued confinement" when the defendant is unaware of the initial confinement during the commission of the underlying felony does not factor into this analysis.
Here, the district court's decision erroneously equates both "avoiding detection and apprehension" and "extend[ing] the time of confinement"facts that are relevant to establishing the Faison testwith satisfying the essential elements required under the kidnapping statute, including that such actions "facilitate[d] [Delgado's] commission of the [auto] theft." Id. 1057-58, 1057 n. 3. Yet, as explained above, whether the evidence presented at trial satisfies the statutory elements and whether it satisfies the three parts of Faison are separate and distinct inquiries to be conducted independent of one another. The Third District's decision disregards satisfying the language of the statute as an inquiry separate from Faison. and in doing so, misapplies the principles we announced in that decision.
*64 Under the Third District's decision, the State would be able to avoid its burden to satisfy the statutory requirements set forth in section 787.01(1)(a)2. so long as it can establish that all three parts of the Faison test have been met. However, such an expansive reading of the Faison decision would actually exacerbate the very problem this Court in Faison sought to avoid: expanding the class of defendants who could be subject to a kidnapping conviction for alleged confinement subsumed in another criminal act. Even if Delgado's acts did, in fact, satisfy all three Faison requirements, the Third District erred by not first determining whether Delgado had the requisite knowledge of the victim before or during his execution of the auto theft as required by the statute.
Second, we conclude that the Third District's reliance on Taylor by adopting its special-danger-to-children analysis was misplaced because that decision is materially distinguishable from this case in terms of both the operative facts and the applicable statutes at issue. The defendant in Taylor was convicted of hijacking under Indiana's kidnapping statute[6] after driving off in a car in which two children, ages seven and four, were already restrained in car seats. Taylor, 879 N.E.2d at 1201-02. On appeal, the Indiana appellate court affirmed Taylor's hijacking conviction, first explaining that a reasonable trier of fact could have concluded that "Taylor knew there were children in the car as he approached it or almost immediately after he entered it" because the evidence showed that it was a sunny day, the windows of the vehicle were not tinted, the parents yelled loudly and repeatedly for their children as Taylor was pulling out of the driveway, and Taylor expressly acknowledged that he did not abandon the car the instant he discovered it was occupied. Id. at 1202.
Taylor argued that his hijacking conviction could not stand because there was no evidence that he used or threatened to use force as required by the Indiana statute. Id. Rejecting Taylor's contention, the appellate court concluded that Taylor's actions fell squarely in line with the risk the Legislature sought to prevent under the statutory provision at issue, reasoning as follows:
When the victims are children, a defendant may need only minimal force to accomplish a hijacking. That the victims are relatively helpless does not absolve the defendant of liability for kidnapping. Taylor took advantage of the fact the children were restrained in car seats and locked in the car. He took further steps to prevent their escape by driving at a high rate of speed.
Id. at 1203. The court's holding hinged on the fact that Taylor knew the children *65 were in the car and were restrained in car seats. Id. at 1202.
In contrast to Taylor, where the defendant conceded that he did not abandon the car the moment he discovered that it was occupied, in this case, Delgado does not make a similar concession and actually asserts that he was unaware of the child's presence. Further, Taylor's "special danger" analysis was not used to interpret a kidnapping provision similar to section 787.01(1)(a)2., under which a separate felony is used to support a kidnapping conviction; rather, the Indiana court's assessment of special harm focused on whether Taylor applied the requisite level of force amounting to one, distinct felony.
Unlike what the Third District intimates in its decision, Taylor did not make a connection between the level of force needed to sustain a hijacking conviction standing alone and the type of confinement that is slight, inconsequential, and merely incidental to another felony for the purposes of establishing the first part of the Faison test. Moreover, the principle from Taylor quoted by the Third Districtthat "if you are going to steal or commandeer a vehicle, let the people in it go and don't force people into it against their will"cannot logically apply when the defendant lacks knowledge of the victim. Delgado, 19 So.3d at 1058 (quoting Taylor, 879 N.E.2d at 1203). And although we recognize that the offense charged in Taylor may be similar to Florida's provision on carjacking,[7] Delgado was not charged with carjacking, it was not the underlying felony used to support his kidnapping conviction, and this Court has never extended the Faison test to that particular statute. Therefore, Delgado's reliance on Taylor as support for its holding was misplaced.
Significantly, under the Third District's rationale, there was nothing Delgado could do to avoid a kidnapping conviction once he discovered the child's presence after his completion of the auto theft. The Third District even suggests imposing an additional obligation upon the defendant to submit "an anonymous tip of some kind" or voluntarily surrender. Delgado, 19 So.3d at 1057. This logic would modify the statutory elements of Florida's kidnapping provision, which we decline to do. See Kasischke v. State, 991 So.2d 803, 810 (Fla. 2008) ("The Legislature did not include such language, and we cannot add it on our own.").

Applying the Correct Rule of Law to this Case
Based on the foregoing, the core issue before this Court is whether there were sufficient facts presented from which a jury could find that Delgado knew there was a child in the backseat when he stole the vehicle. On his motion for judgment of acquittal on the kidnapping charge, Delgado argued there was not. The trial court disagreed and denied Delgado's motion. The Third District upheld the trial court's denial.
In reviewing a denial of a motion for judgment of acquittal, this Court employs a de novo standard of review. See McDuffie v. State, 970 So.2d 312, 332 (Fla.2007). "Generally, an appellate court will not reverse a conviction that is supported by competent, substantial evidence." Reynolds v. State, 934 So.2d 1128, 1145 (Fla.2006). "There is sufficient evidence to sustain a conviction if, after viewing *66 the evidence in the light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt." Johnston v. State, 863 So.2d 271, 283 (Fla. 2003). "In moving for a judgment of acquittal, a defendant `admits not only the facts stated in the evidence adduced, but also admits every conclusion favorable to the adverse party that a jury might fairly and reasonably infer from the evidence.'" Reynolds, 934 So.2d at 1145 (quoting Beasley v. State, 774 So.2d 649, 657 (Fla.2000)). Under this standard, the State "is required to prove each and every element of the offense charged beyond a reasonable doubt, and when the [State] fails to meet this burden, the case should not be submitted to the jury, and a judgment of acquittal should be granted." Baugh v. State, 961 So.2d 198, 204 (Fla.2007) (quoting Williams v. State, 560 So.2d 1304, 1306 (Fla. 1st DCA 1990)). However, "[w]here the State has presented competent, substantial evidence of the crimes charged, the trial court does not err in denying a motion for judgment of acquittal and submitting the case to the jury." McDuffie, 970 So.2d at 332.
Applying the correct rule of law in this case turns on whether Delgado became aware of the child's presence before or during completion of the underlying felony used to support his kidnapping chargeauto theft. Here, the fact that an auto theft occurred is not in dispute. Nor is it disputed that the burglary of an occupied conveyance occurred, the statutory elements of which were satisfied when Delgado entered the conveyance with the intent to commit an offense therein "and there [was] another person in the conveyance at the time [Delgado] enter[ed]" it. § 810.02(1)(b)1., (3)(d), Fla. Stat. (2006). What is at issue is whether the additional crime of kidnapping, which requires Delgado's awareness of the child to facilitate the commission of auto theft, was established.
Delgado's theory of innocence as to the kidnapping charge was that he had no knowledge of the child's presence when he committed the underlying felony (auto theft) used to support the kidnapping offense. The evidence the State introduced at trial can be summarized as follows. Delgado, along with an accomplice, commandeered a pickup truck with a sleeping, two-year-old child confined to a car seat located in the truck's backseat. The crime occurred in a five-minute period during which the child's mother had left the vehicle unattended with her sleeping child inside. Within twenty to thirty minutes, Detective Hernandez found the vehicle some distance north of the site of the initial auto theft, just outside of Hialeah's city limits; it was in the back of a business parking lot with its engine still running and the doors unlocked.
Upon his discovery, Detective Hernandez approached the vehicle. Because the truck had "darker than regular tints," he could only see into the front seat and "could tell there were no adults in the car or no one in the front seat." Importantly, from the outside, he was unable to see the child or into the complete cab of the vehicle. After opening the driver's side door, Detective Hernandez initially "checked the back seat of the car." The prosecutor then questioned the detective about what he observed from this vantage point:
The Prosecutor: Let me stop you right there. When you first opened the door of the vehicle were you able to see the child in the car?
Detective Hernandez: I had to look into the back seat, but yes, I did see her.
The Prosecutor: Could you see her legs in the car seat?
Detective Hernandez: No.
The Prosecutor: What did you do next?

*67 Detective Hernandez: I looked at the baby and
The Prosecutor: Did looking for her require you to actually get in the seat and look in the back?
Detective Hernandez: No. I just moved the seat over a little bit, then there was a little crease and then I looked and then I could see her, then I folded the car seat forward because I remember having a clear view of the little girl.
Detective Hernandez further stated that when he found her, the child's eyes were puffy from crying, she had mucous running down her face, and that she looked exhausted, but was otherwise unharmed. Additionally, the vehicle's radio was stolen, tools had been removed, and the glove compartment and ashtray had been damaged and thrown to the floorall of which were located in or underneath the vehicle's front-seat area. The State did not introduce any evidence establishing the approximate point in time that Delgado became aware of the child's presence.
Delgado maintains that he had no knowledge that there was a child asleep in the backseat when he stole the vehicle, and the lack of evidence in the record certainly supports his argument. Conversely, the State maintains that the evidence highlighted above was sufficient for a reasonable trier of fact to conclude that Delgado knew there was a child in the car before or during the commission of the auto theft and that his decision to abandon the vehicle in a secluded area without taking steps to assist in the child's discovery or safe placement was intentional. We reject the State's contention that these facts provide competent, substantial evidence of Delgado's awareness of the child prior to or during his theft of the vehicle.
The detective's testimony on which the State relies demonstrates that it was difficult to see the child unless, once inside the vehicle, one were to look into the backseat or move the front seat forward. According to the record, when examining the vehicle's interior, Detective Hernandez was already aware that he was looking for a child and after opening the driver's side door, he initially checked the backseat. While evidence introduced at trial depicts the child as crying and in a frightened state, these observations were made twenty to thirty minutes after the initial auto theft, and before that time, the child was asleep. There is simply no evidence in the record that the child awoke, cried, or kicked the front seat of the vehicle's interior, thereby alerting Delgado to her presence, before or during the auto theft.
In our analysis, we accept the Third District's conclusion that it was "reasonable to infer from the evidence that Delgado became aware that the child was confined in the truck in the course of removing the radio, taking the owner's tools, and ransacking the interior of the vehicle in an obvious search for other valuables." Delgado, 19 So.3d at 1057. However, these acts occurred after the theft of the vehicle and, as explained above, Delgado's awareness of the child at this point is not relevant to a kidnapping charge under the statute. Given the sparse facts in the record, we conclude that the State did not introduce competent, substantial evidence demonstrating that Delgado became aware of the child's presence when he stole the vehicle.
Accordingly, the State failed to produce sufficient evidence to sustain Delgado's kidnapping conviction under section 787.01(1)(a)2., notwithstanding the applicability of the Faison test to this circumstance, and the trial court erred in denying his motion for judgment of acquittal. Further, Delgado's act of abandoning the child following the auto theft, absent imposing *68 an affirmative duty not present in the statute upon the defendant to alert other authorities to the child's presence, does not amount to the act of kidnapping as contemplated by the statute. The Third District's decision indicating otherwise was in error.
We note that if Delgado had left the child in the vehicle unattended after transporting her away from her parents and harm to the child could reasonably have been expected to ensue, the State could have charged Delgado with child abuse pursuant to section 827.03(1)(b), Florida Statutes (2006),[8] and the evidence may have been sufficient to sustain a conviction under that charge. See Ford v. State, 802 So.2d 1121, 1126, 1131 (Fla.2001) (concluding that defendant's act of leaving a 22-month-old child strapped into her car seat in an open pickup truck in an isolated, wooded area for over 18 hours after murdering the child's parents, thereby exposing the child to dehydration, heat, and numerous insect bites was sufficient to support a third-degree felony child abuse conviction under section 827.03). However, Delgado was not charged with child abuse. We further note that Delgado has not challenged his conviction for burglary of an occupied conveyance, which rests upon the fact that he entered an occupied vehicle with an intent to commit theft.

CONCLUSION
In accordance with our analysis above, we conclude that because the State failed to produce sufficient evidence demonstrating Delgado's awareness of the child before or during his execution of the underlying felony of auto theft, the statutory requirements under section 787.01(1)(a)2. were not met. The Third District's decision analyzing this claim by solely applying the Faison test's three parts, without first analyzing the issue on statutory grounds, resulted in a significant misapplication of the principles we announced in Faison. Accordingly, we quash the Third District's decision in Delgado v. State, 19 So.3d 1055 (Fla. 3d DCA 2009), and remand to the district court with instructions to vacate Delgado's conviction for kidnapping.[9]
It is so ordered.
QUINCE and PERRY, JJ., concur.
LABARGA, J., specially concurs with an opinion.
LEWIS, J., dissents with an opinion, in which CANADY, C.J., and POLSTON, J., concur.
LABARGA, J., specially concurring.
I concur in the majority opinion because I agree that the district court failed to correctly analyze the issue in the case when it applied the Faison test without first determining if the State proved all the elements of a kidnapping under section 787.01, Florida Statutes. The majority is correct that only after the evidence satisfies the statutory elements set forth in section 787.01 may the court then apply Faison's three-part test. Moreover, when the first step in this process is analyzed, it can be seen that the only evidence offered to prove Delgado's awareness of the presence of the child in the vehicle was the *69 testimony of Detective Roger Hernandez. The detective testified that he opened the driver's side door and, after moving the seat over and looking through a "crease," he could then see the child in the back seat. He noticed that the child's eyes were puffy from crying, she had mucous running down her face, and she looked exhausted. While this proves that at some point the child cried, it does not prove when the child cried or if Delgado heard her cry. While evidence was presented that the child was asleep when the mother left her in the truck to enter the store, there was no evidence presented that the child awoke during the incident. Although the truck was found only three miles from where it was taken, up to thirty minutes had passed before it was located. Thus, Detective Hernandez's evidence was not inconsistent with the child beginning to cry after Delgado left the scene. I therefore agree with the majority that under section 787.01(1)(a)(2), the State failed to prove that the defendant was aware of the victim's presenceproof that is necessary in order to convict Delgado of kidnapping the child with a specific intent to commit or facilitate the commission of the underlying felony of auto theft. For these reasons, I concur with the majority's decision to quash the decision of the Third District and remand with instructions to vacate Delgado's conviction for kidnapping.
I write, however, to express my view that if the evidence had proven that Delgado became aware of the presence of the child at any time during the auto theft, up until the time he left the vehicle, the facts would support his conviction for kidnapping. As noted by the majority, "under section 787.01(1)(a)(2), a defendant's awareness of the victim must arise before or during the commission of the underlying felony." Majority op. at 63 (emphasis added). In my view, the auto theft was ongoing during the entire time that Delgado was driving the truck and while he was removing the items that he stole. Because the State failed in its proof that Delgado became aware of the child at any point during the incident, I concur in vacating the conviction for kidnapping.
LEWIS, J., dissenting.
The decision of the Third District Court of Appeal below does not expressly and directly conflict with a decision of any other Florida court. Further, the court below did not misapply Faison v. State, 426 So.2d 963 (Fla.1983), but to the contrary, held true to the applicable principles of Florida law and rendered a decision that is eminently correct and, most assuredly, not contrary to well-established existing Florida law. Here, a two-year-old child was abducted while in the backseat of the family vehicle and she was transported to a location some three miles from the place of abduction. A surveillance camera captured most of the action at the scene of the abduction. The trial judge provided the jury with proper instructions on the applicable law, the jury returned a verdict of guilty, the Third District Court below correctly applied the proper law, and this Court has no proper jurisdictional basis to become involved with this case and no correct substantive legal basis to quash the decision below.
CANADY, C.J., and POLSTON, J., concur.
NOTES
[1] Delgado was also convicted of grand theft for items stolen from the vehicle during this incident. However, at sentencing, that conviction was reduced to petit theft, and Delgado was sentenced to time served for that offense.
[2] The furniture store where the auto theft took place was located in Flamingo Plaza at 901 East 10th Avenue in Hialeah, Florida. The site of where the vehicle and child were later found was located approximately three miles away at 9371 Northwest 27th Avenue.
[3] The current 2010 version of section 787.01(1)(a)2., Florida Statutes, is the same as the 2006 version at issue in this case.
[4] Delgado also challenged the trial court's failure to grant his motion for a mistrial after a State witness testified that Delgado invoked his right to remain silent following a reading of his rights pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The Third District dismissed this issue as meritless without elaboration. See Delgado, 19 So.3d at 1056 n. 1. Delgado does not challenge that issue in this Court, and it does not affect this Court's resolution of the present case.
[5] Delgado does not challenge whether the confinement of the child was against her will, and therefore, we do not discuss that issue any further.
[6] While Indiana and Florida's kidnapping statutory schemes contain two similar provisions, Indiana's statute lacks a separate provision criminalizing confinements used to commit or facilitate the commission of an underlying felony. Specifically, Indiana Code section 35-42-3-2(a) provides:

A person who knowingly or intentionally confines another person:
(1) with intent to obtain ransom;
(2) while hijacking a vehicle;
(3) with intent to obtain the release, or intent to aid in the escape, of any person from lawful detention; or
(4) with intent to use the person confined as a shield or hostage; commits kidnapping, a Class A felony.
Taylor was charged with knowingly or intentionally confining the two children while hijacking the vehicle. In Indiana, "hijacking" is judicially defined as "the exercise of `unlawful or unauthorized control of a vehicle by force or threat of force upon the vehicle's inhabitants.'" Taylor, 879 N.E.2d at 1202 (quoting Zimmerman v. State, 785 N.E.2d 1158, 1161 (Ind.Ct.App.2003)).
[7] "Carjacking" is defined by statute as "the taking of a motor vehicle which may be the subject of larceny from the person or custody of another, with intent to permanently or temporarily deprive the person or the owner of the motor vehicle, when in the course of the taking there is the use of force, violence, assault, or putting in fear." § 812.133(1), Fla. Stat. (2010).
[8] Section 827.03(1)(b) defines "[c]hild abuse" as "[a]n intentional act that could reasonably be expected to result in physical or mental injury to a child."
[9] We similarly reject the State's alternative argument that Delgado's unsupported kidnapping conviction should be reduced to the lesser-included offense of false imprisonment, a general intent crime. Without evidence establishing Delgado's knowledge of the intended victim, a conviction for false imprisonment would be likewise unsupported.