# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 18 2018, 8:56 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Scott L. Barnhart
Brooke Smith
Keffer Barnhart LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kory Tremaine Johnson, <br> *Appellant-Defendant,* <br><br> *v.* <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | April 18, 2018 <br><br> Court of Appeals Case No. 82A05-1710-CR-2263 <br><br> Appeal from the Vanderburgh Circuit Court <br><br> The Honorable Kelli E. Fink, Magistrate <br> The Honorable David D. Kiely, Judge <br><br> Trial Court Cause Nos. <br> 82C01-1704-F5-1977 <br> 82C01-1610-F5-6049 |

**Bradford, Judge**

# Case Summary[1]

In March of 2017, Appellant-Defendant Kory Johnson was at the Evansville home of Jermekca Outlaw. After a heated discussion on the telephone with another person, Johnson fired several shots out the back door. Outlaw left, taking her three children and a young niece. When Outlaw returned some time later, Johnson was on her front porch. Outlaw managed to get inside with the children, at which point Johnson repeatedly asked to be let in. When Outlaw refused, Johnson unsuccessfully attempted to enter through several windows, eventually trying a kitchen window in the back of the house. When Outlaw again refused Johnson entry, he shot three times at the doorknob of the back door.

Johnson was charged with two counts of Level 6 felony carrying a handgun without a license, Level 5 felony criminal recklessness, and Level 6 felony attempted residential entry and requested a speedy trial. The day before trial (which was set for the last day of the speedy-trial period), the State notified the trial court that it could not secure the presence of a key witness for trial and requested a continuance. The State had first attempted to contact the witness eight days before trial and had never received any response. The trial court granted the State's request for a continuance of approximately one month, and

---

[1] Oral argument was held in this case on March 8, 2018, at Ivy Tech Community College in Lafayette, Indiana. We would like to thank the faculty, staff, and students of Ivy Tech for their hospitality and counsel for the high quality of their arguments.

Johnson was eventually convicted of Level 6 felony carrying a handgun without a license, Level 5 felony criminal recklessness, and Level 6 felony attempted residential entry. The trial court sentenced Johnson to seven years of incarceration and revoked the probation imposed in an earlier case. Johnson contends that the trial court erred in granting the State's request for a continuance and that his convictions violate Indiana constitutional prohibitions against double jeopardy, specifically, the actual evidence test. Because we disagree with both contentions, we affirm.

## Facts and Procedural History

[3] On January 19, 2017, in cause number 82C01-1610-F5-6049 ("Cause No. 6049"),[2] Johnson pled guilty to Level 6 felony battery against a public safety official and Class A misdemeanor resisting law enforcement. On March 23, 2017, the trial court sentenced Johnson to two years of incarceration, all suspended to probation.

[4] Meanwhile, on or about March 20, 2017, Jermekca Outlaw had met Johnson, and the two began a sexual relationship. On March 31, 2017, Johnson collected Outlaw from her home on Washington Avenue in Evansville at around 8:00 p.m. and drove her around for a while. Johnson seemed

---

[2] Unless noted, all material in this document refers to Cause No. 1977. In fact, Johnson makes no specific argument regarding the probation revocation in Cause No. 6049. Perhaps Johnson assumes that a reversal of his convictions in Cause No. 1977 would automatically lead to a reversal of his probation revocation in Cause No. 6049, as they were the basis of the revocation. Be that as it may, we decline to entertain granting this relief when no challenge has been made.

intoxicated and argumentative and repeatedly called Outlaw a "b****[.]" Tr. Vol. III p. 21. Outlaw walked home.

[5] Later, at around 11:00 p.m., Outlaw was at home with her three children and a niece when Johnson returned, arguing with somebody on the telephone. Johnson pulled out a handgun and began to load it. Johnson's telephone kept ringing, and he kept telling those on the other end that he was at Outlaw's house and to "pull up on him." Tr. Vol. III p. 23. Outlaw became concerned with Johnson's actions and told him that he had to leave. Johnson's telephone rang again, and he told the caller, "'Do I have to send shots to let you know that I'm on Washington?'" Tr. Vol. III p. 24. Johnson opened the back door and "shot off like four shots[.]" Tr. Vol. III p. 24. Outlaw took the children and left.

[6] Outlaw returned a while later to find Johnson on her front porch. Outlaw took the children inside and locked the door. Outlaw refused to let Johnson in despite several requests, and he made several attempts to enter through windows, eventually trying a kitchen window on the back of the house. When Outlaw closed the window, Johnson asked, "'So you really not gonna let me in here?'" Tr. Vol. III p. 32. Outlaw replied "'No[,]'" and Johnson said, "'If you don't open this door I'm about to send shots through it.'" Tr. Vol. III p. 32. Outlaw retreated to the hall closet (where she had told the children to hide), and Johnson fired three shots in an attempt to shoot the knob off of the back door. Around this time, police arrived.

[7] On April 4, 2017, the State charged Johnson with Level 5 felony carrying a handgun without a license with a felony conviction within the past five years, Level 5 felony carrying a handgun without a license with a prior conviction, Level 5 felony criminal recklessness, and Level 6 felony attempted residential entry. On April 5, 2017, Johnson requested a speedy trial pursuant to Criminal Rule 4(B). On June 13, 2017, the day before trial was scheduled, the State moved to continue the trial, which motion was granted. The basis of the State's request for continuance was that it had been unable to secure the presence of Evansville Police Detective John Pieszchalski, a crime scene technician who processed the scene on Washington Avenue and collected a firearm and several shell casings. On June 15, 2017, Johnson moved for discharge, which motion was denied the same day.

[8] On July 18, 2017, a jury found Johnson guilty of Class A misdemeanor carrying a handgun without a license, Level 5 felony criminal recklessness, and Level 6 felony attempted residential entry. On August 11, 2017, the trial court found that Johnson's carrying a handgun without a license conviction was a Level 6 felony by virtue of a prior conviction for the same offense and/or a felony conviction within the past fifteen years.

[9] On September 11, 2017, the trial court found that Johnson had violated the terms of probation imposed in Cause No. 6049 by committing the crimes charged in Cause No. 1977, granted the State's petition to revoke, and ordered that he serve his two-year sentence. On September 12, 2017, the trial court sentenced Johnson to an aggregate sentence of seven years of incarceration in

Cause No. 1977.  On November 17, 2017, this court granted Johnson's motion to consolidate his appeals in Cause Nos. 6049 and 1977.

# Discussion and Decision

## I.  Speedy Trial

The right of an accused to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and by Article I, Section 12 of the Indiana Constitution.  *Clark v. State*, 659 N.E.2d 548, 551 (Ind. 1995).  This "fundamental principle of constitutional law" has long been zealously guarded by our courts.  *Id*. (quoting *Castle v. State*, 237 Ind. 83, 85, 143 N.E.2d 570, 572 (1957)).  Criminal Rule 4 implements a defendant's right to a speedy trial.  Criminal Rule 4(B)(1) provides, in part, as follows:

> If any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act, or where there was not sufficient time to try him during such seventy (70) calendar days because of the congestion of the court calendar. Provided, however, that in the last-mentioned circumstance, the prosecuting attorney shall file a timely motion for continuance as set forth in subdivision (A) of this rule.

While Criminal Rule 4 implements the defendant's right to a speedy trial, *Otte v. State*, 967 N.E.2d 540, 545 (Ind. Ct. App. 2012), it does not contemplate a mere technical means to escape prosecution.  *Austin v. State*, 997 N.E.2d 1027, 1041 (Ind. 2013).  After according the trial court's findings reasonable deference,

appellate review is for clear error. *Austin*, 997 N.E.2d at 1040. This Court will neither reweigh the evidence nor determine the credibility of witnesses and will consider only the probative evidence and reasonable inference supporting the judgment. *Id*. A clear error is one that leaves the Court with a definite and firm conviction that a mistake has been made. *Id*.

[12] "The absence of a key witness through no fault of the State is good cause for extending the time period requirements for early trial under Rule 4." *Woodson v. State*, 466 N.E.2d 432, 434 (Ind. 1984). If at the time the defendant requests discharge the court is "satisfied that there is evidence for the state, which cannot then be had, that reasonable effort has been made to procure the same and there is just ground to believe that such evidence can be had within ninety (90) days, the cause may be continued[.]" Crim. R. 4(D).

[13] The record indicates that Detective Pieszchalski was emailed on June 6, 2017, notifying him that Johnson's trial was to begin on June 14, 2017. On June 12, 2017, somebody from the Vanderburgh County Prosecutor's Office emailed Detective Pieszchalski, asking when he could participate in a witness conference. There is no indication that Detective Pieszchalski responded to either of these emails.

[14] On June 13, 2017, the State requested a continuance on the basis that Detective Pieszchalski's presence at trial, despite attempts to contact him, could not be ensured. In its verified motion to continue trial, the State claimed that it had become aware of Detective Pieszchalski's unavailability on June 12, 2017; had

been unable to contact him via email, cellular telephone, social media, or his chain of command; and believed him to be out of the state. (Appellant's App. Vol. II 115). The State also indicated that it had confirmed with Detective Pieszchalski's Captain that he would return to work in July and requested a continuance to July 10, 2017.

[15] Johnson argues that the State's efforts to secure Detective Pieszchalski for trial were not reasonable and that the trial court therefore committed clear error in granting the State's motion to continue trial. Keeping in mind that the trial court was in the best position to evaluate the reasonableness of the State's efforts to secure Detective Pieszchalski for trial, we conclude that Johnson has failed to establish clear error.

[16] The record indicates that securing the presence of law enforcement officers via email (without formally issuing a subpoena) is the standard operating procedure for the Vanderburgh Prosecutor's office. It is reasonable to infer from this that the procedure has worked well for the office in the past and that if securing the presence of law enforcement witnesses ever became an issue, subpoenas would be issued. As for the timing of the prosecutor's attempt to secure Detective Pieszchalski's testimony, we cannot say that Johnson has established that it was unreasonably late. Even eight days before trial would have been more than enough time to secure Detective Pieszchalski's testimony in some other form, had the prosecutor's office known that it was necessary to do so. The problem here was that Detective Pieszchalski was seemingly completely incommunicado by the time the deputy prosecutor attempted to contact him.

[17] It is also worth noting that the continuance asked for was relatively short, at less than a month, because the State asked for just enough time to ensure Detective Pieszchalski's availability for trial and no more. Even though Criminal Rule 4(C) contemplates continuances of up to ninety days, the State requested a continuance of only twenty-six days. Under the circumstances of this case, we conclude that Johnson has failed to establish that the trial court committed clear error in granting the State's request for a continuance.

## II. Double Jeopardy

[18] Johnson contends that his three convictions in Cause No. 1977 violate constitutional prohibitions against double jeopardy. As mentioned, the jury found Johnson guilty of Class A misdemeanor carrying a handgun without a license,[3] Level 5 felony criminal recklessness, and Level 6 felony attempted residential entry. In *Richardson v. State*, 717 N.E.2d 32 (Ind. 1999), the Indiana Supreme Court held "that two or more offenses are the 'same offense' in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to … the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Id.* at 49–50.

> To show that two challenged offenses constitute the "same offense" in a claim of double jeopardy, a defendant must demonstrate a reasonable possibility that the evidentiary facts

---

[3] The trial court later found the offense to be a Level 6 felony by virtue of a prior conviction for the same offense and/or a felony conviction within the past fifteen years.

> used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense.

*Id.* at 53. "In determining the facts used by the fact-finder to establish the elements of each offense, it is appropriate to consider the charging information, jury instructions, and arguments of counsel." *Lee v. State*, 892 N.E.2d 1231, 1234 (Ind. 2008) (citing *Spivey v. State*, 761 N.E.2d at 832 (Ind. 2002); *Richardson*, 717 N.E.2d at 54 n.48).

[19] If each conviction requires at least one unique evidentiary fact, no violation of the actual evidence test occurs. *Weddle v. State*, 997 N.E.2d 45, 47 (Ind. Ct. App. 2013), *trans. denied*; *see also Berg v. State*, 45 N.E.3d 506, 509 (Ind. Ct. App. 2015) (concluding that the double jeopardy clause is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense). Allegations that multiple convictions violate double jeopardy prohibitions are reviewed *de novo*. *Weddle*, 997 N.E.2d at 47.

[20] Johnson has failed to establish that his conviction for carrying a handgun without a license violates the actual evidence test. The charging information alleged that "on or about March 31, 2017, Kory Tremaine Johnson … did carry a handgun in any vehicle or on or about his body without being licensed[.]" Appellant's App. Vol. II p. 96. Outlaw testified that Johnson had a gun at her kitchen table on the night of March 30, 2017, which is sufficient, by itself, to sustain Johnson's conviction for carrying a handgun without a license. The

prosecutor pointed to that fact during her closing argument before detailing Johnson's continuing criminal conduct. Moreover, the jury instruction specified what conduct was required to convict Johnson of carrying a handgun without a license: "Johnson … carried a handgun in a vehicle or on or about his person … away from [his] dwelling, property or fixed place of business." Appellant's App. Vol. II p. 159. Nowhere in any of this is any suggestion that use of the handgun was necessary to complete, or was used to prove, the crime of carrying a handgun without a license.

[21] We further conclude that the jury was presented with more than one unique fact to support Johnson's conviction for criminal recklessness. The State alleged that "on or about March 31, 2017, Kory Tremaine Johnson did recklessly, knowingly, or intentionally perform an act that created a substantial risk of bodily injury to another person by shooting a firearm into an inhabited dwelling[.]" Appellant's App. Vol. II p. 96. The jury instructions for criminal recklessness indicated that State was required to prove that "Johnson … recklessly, knowingly or intentionally … performed an act that created a substantial risk of bodily … injury to another person, and … by shooting a firearm into an inhabited dwelling of Jermekca Outlaw[.]" Appellant's App. Vol. II p. 160. Outlaw's testimony about being home with three of her children and a niece when she heard gunshots, and evidence of a bullet hole and bullet found in Outlaw's son's room, tend to establish the above. More importantly, performing an act that created a substantial risk of bodily injury and shooting a firearm into an inhabited dwelling do not tend to prove any element of

Johnson's other charges. Johnson has failed to establish that his criminal recklessness conviction violates prohibitions against double jeopardy.

[22] Finally, we conclude that Johnson's attempted residential entry conviction is supported by unique evidentiary facts. The charging information for his count alleged that

> on or about March 31, 2017, Kory Tremaine Johnson did attempt to commit the crime of Residential Entry: knowingly or intentionally breaking and entering the dwelling of Jermekca Outlaw … by performing conduct that constituted a substantial step toward the commission of said crime, to wit: opening windows, and/or lifting screens, and/or damaging a door knob, and/or reaching through a hole[.]

Appellant's App. Vol. II p. 96.

[23] The record contains evidence that Johnson lifted all of the screens on Outlaw's windows in an attempt to get into the home after she locked him out and refused entrance, and Outlaw saw him attempt to put his hand through the hole he caused by shooting the doorknob off. These are evidentiary facts that had no relevance to Johnson's criminal recklessness or carrying a handgun without a license charges. The jury instructions also focused on specific, unique conduct that related only to the attempted residential entry conviction: "Johnson … did knowingly or intentionally attempt to break and enter the dwelling of Jermekca Outlaw … by opening windows, and/or lifting screens, and/or damaging a door knob, and/or reaching through a hole[.]" Appellant's App. Vol. II pp. 161–62.

[24] Johnson argues that the prosecutor's closing argument created a reasonable probability that the jury used the same facts to convict Johnson on both the residential entry and criminal recklessness charges. We disagree that the argument had this effect. For one thing, the prosecutor made the argument to rebut Johnson's previous assertion that there was "no attempt to get into that house[.]" Tr. Vol. II p. 148. Countering the assertion, the prosecutor argued that

> I do not know how you can reach that conclusion that there was no evidence the defendant tried to gain entry into the home. Between screaming at the home's occupant. Between having to be kicked off the front porch, between shooting out the doorknob, checking the windows, lifting the screens, sticking a hand through a hole that was created when he shot off the doorknob, that seems to be evidence to me of attempting to get into the home.

Tr. Vol. II p. 157.

[25] Although one fact (the shooting at the doorknob) could have been used to support, in part, the convictions for both attempted residential entry and criminal recklessness, this is not enough to violate the actual evidence test. *See Borum v. State*, 951 N.E.2d 619, 626 (Ind. Ct. App. 2011) (a single fact supporting a first charge and also included among additional facts supporting a second charge does not indicate a reasonable probability that the jury based its findings of guilt on the same evidence, which is especially true in cases involving protracted criminal episodes). In summary, we conclude that

Johnson has failed to establish that any of his three convictions violate constitutional prohibitions against double jeopardy.

# Conclusion

[26] Johnson's speedy-trial rights were not violated in Cause No. 1977, as we conclude that, under the circumstances of this case, the State's efforts to secure Detective Pieszchalski's presence for trial were reasonable, entitling it to the continuance it received. Also, we conclude that none of Johnson's three convictions in Cause No. 1977 were based on the same actual evidence.

[27] We affirm the judgment of the trial court.

Robb, J., and Altice, J, concur.